No. 63.—THOMAS J. HEARD and another, propounders, &c., plaintiffs in error, *vs.* JOHN A. HEARD and another, defendants.

[1.] After a bill of exceptions has been signed and certified by the Judge of the Superior Court and filed with the Clerk, his control over it is at an end.

[2.] Under the Acts of 23d February, 1850, the *original* bill of exceptions must remain in the Clerk's office below, for the inspection of all parties interested, and a *copy* be transmitted to the Supreme Court, as a part of the transcript of the record, or accompanying the same; and if this is not done, the cause will be stricken from the docket.

[3.] The Act of 23d February, 1850, allowing the copy of the bill of exceptions, with the transcript of the record, to be made out and sent up to the Supreme Court, on or before the first day of the term to which the writ of error is returnable, would seem virtually to repeal that provision of the Act of 1845, which requires the transcript to be sent up within ten days from the filing of the notice.

[4.] Where no other time is fixed for the operation of a Statute, it takes effect from its passage; and ignorance of the Act forms no *legal* excuse for its violation.

In error, from Elbert County.

A preliminary motion was made to dismiss the writ of error in this case, on the following grounds:

1st. Because no complete transcript of the entire record of the cause below, has been sent up and certified by the Clerk of the Superior Court, as required by the Act organizing this Court.

2d. Because there is no bill of exceptions, certified by the Clerk of the Superior Court to be the original bill of exceptions filed in his office and sent up by him to this Court.

3d. Because the presiding Judge, who certified the said bill of exceptions, being satisfied that the same was not true and consis-

tent with what transpired on the trial of the cause before him, withdrew the said certificate, as appears by the order filed with the papers in this Court.

As to the first ground, the facts were, that the transcript did not contain a copy of the bill of exceptions, as required by the Act of 1850.

As to the second ground, the bill of exceptions had thereon the following entry :

" Filed in the Clerk's office of the Superior Court of Elbert County, and State of Georgia, this 24th day of April, 1850.
                              " WM. JOHNSTON, *Clerk.*"

There was not the usual certificate, that this was the original bill of exceptions filed in his office, and the date of its transmission to the Supreme Court.

As to the third ground, the bill of exceptions was signed on April 22d.   On 25th April, the presiding Judge granted at Chambers an order directed to the Clerk, that he " do send no record of said case to the Supreme Court, nor said bill of exceptions ; but said Clerk is hereby ordered to retain in his office said record, and to bring before me (the Judge) the bill of exceptions aforesaid, in order that the mistakes may be corrected."

Cobb, for the motion.

Cone, contra.

*By the Court.*—Lumpkin, J. delivering the opinion.

We shall consider only the first and third grounds taken in the motion.

[1.] Has the Judge of the Superior Court the right to arrest or otherwise interfere with the bill of exceptions, after it has been signed and certified by him, and filed with the Clerk ?   We think not.   His duty is then performed, and his control over the bill of exceptions at an end.   Any other construction would involve the Clerk in inextricable difficulty ; for, should he fail or refuse to send up to this Court a complete transcript of the entire record, including a copy of the bill of exceptions, as required by law, he

is liable to be attached and otherwise punished for his delinquency. The Legislature could not have intended to place this officer in a predicament, where he would be forced to decide, at his peril, between this conflict of jurisdictions, and, in any event, to be answerable to the one whose mandate he disobeyed.

We suppose, that when the presiding Judge has signed and certified the bill of exceptions, his power as well as duties in relation to the matter, are terminated ; and, consequently, he must see to it, that the bill of exceptions, when presented, is true and consistent with what has transpired in the case before him.

That great injustice is sometimes done, both to the Court below and to the parties, by the bill of exceptions, we entertain no doubt ; and the evil can only be obviated by the adoption of some practice by the Judges, to prevent surprise. Let it be required, for instance, that the exceptions be reduced to writing at the time they are taken, or that notice be given to the opposite party to appear, at a time and place stated, before the Judge who tried the cause, to suggest any alterations to the case as made out, so that the bill of exceptions, as prepared, and the amendments, may be mutually agreed upon, or corrected and settled, as the Judge shall deem consistent with the truth. I trust I shall be pardoned for making this suggestion—originating, as it does, in no spirit of dictation, but in an extreme solicitude to protect the Circuit Bench, as well as the rights of suitors.

[2.] On the other ground, this writ of error must be dismissed, namely : because there is, neither in the transcript of the record, nor accompanying it, a copy of the bill of exceptions, as required by the Acts of the last Legislature. The Acts, (for there are two of them upon this subject,) in substance declare, that the Clerk of the Superior Court shall, in all cases, retain the *original* bill of exceptions in his office, and on or before the first day of the Court to which the writ of error is returnable, send up a *copy* thereof, as a part of the transcript of the record, or accompanying the same. *Pamphlet Acts, pp.* 68, 141.

Here, no copy of the bill of exceptions is embodied in the transcript, in accordance with the provisions of one of these Statutes, nor accompanies it, in the terms of the other. But a document, purporting to be the *original* bill of exceptions, and which no doubt is, has been sent up, together with the other pa-

pers, though not certified, as required to be, previous to the passage of the late law.

[3.] I would remark, in passing, that one of these Statutes, by allowing till the first day of the term to which the writ of error is made returnable, for making out and sending up to this Court the copy of the bill of exceptions, with the transcript of the record, would seem virtually to have repealed the provision in the Act of 1845, requiring the Clerk to make out and send up the transcript, within ten days from the filing of the notice of the signing of the bill of exceptions. It was probably so intended.

It is a substantial right, which belongs to the defendant in error, to have the original bill of exceptions remain where he can have access to it, that he may see what case has been made against him, and come to this Court prepared to meet it; and to deprive him of this privilege, by withdrawing the original papers from their proper depository, instead of transmitting a copy here, as required by the Acts, makes it obligatory upon the Court to strike this cause from the docket.

[4.] The party complains that he had no notice of these Statutes. They were approved by the Governor, on the 23d of February—published in the gazettes of the State, by authority, on the 19th of March—and the bill of exceptions was not signed until the 22d day of April—two months after the passage of the Acts, and more than one subsequent to their publication. But, were it otherwise—had these Acts been passed the day before the bill of exceptions was tendered, there is no dispensing power in the Court, to relieve the citizen from the consequences of his ignorance, however unavoidable on his part. 1 *Gallison*, 62. In this case, from the Circuit Court in Massachusetts, the brig *Ann* was libelled and condemned for sailing from Newburyport on the 12th of January, 1808, contrary to the Act of Congress of the 9th of January, 1808, though it was admitted that the Act was not known in Newburyport on the day the vessel sailed. The Court admitted that the objection to the forfeiture of the brig was founded on the principles of good sense and natural equity, and that unless such time be allowed as would enable the party, with reasonable diligence, to ascertain the existence of the law, an innocent man might be punished in his person and property, for an act which was innocent, for aught he knew, or could by possibility have known, when he did it; still it held, that the rule was

fixed beyond the power of judicial control, and that no time was allowed for the publication of a law before it operates, when the Statute itself gives no time.

In the case before us, no time is fixed in the Act; and the settled rule is, that it takes effect from its date. *Matthews vs. Gane,* 7 *Wheaton,* 104.

The English rule formerly was, that if no period was fixed by the Statute itself, it took effect from the first day of the session in which the Act was passed—a doctrine most absurd and flatly unjust. And yet this continued to be the law, until the 33 of *Geo. III,* which declared that Statutes are to have effect only from the time they received the royal assent. One of the elementary principles of municipal law is, that it be *"prescribed."* All laws should, therefore, be made to commence *in futuro,* and be notified to the community a sufficient length of time before they go into operation; for, in this way alone can they properly be said to be *prescribed.* In New York, under their revised code, every law, unless a different time is specified, takes effect on the twentieth day after that of its final passage—in Massachusetts, on the thirtieth. But we doubt whether even this period is long enough for such a wide-spread territory as Georgia. By the law, as it now stands, that is, for the Statute to take effect, as most of our Acts do, from and immediately after their passage, a good deal of hardship and inconvenience has been experienced. By the Constitution of Mississippi, as declared in 1833, no Statute operates upon the persons or property of individuals, until sixty days after its enactment; and we would respectfully submit to our law-makers, whether it is reasonable or just that a shorter time be allowed in this State.