| 83 | 367 |
|----|-----|
| 85 | 339 |

| 83 | 367 |
|----|-----|
| 90 | 31 |

| 83 | 367 |
|----|-----|
| 91 | 440 |

| 83 | 367 |
|----|-----|
| 94 | 512 |

JOHN COLL v. THE CITY BOARD OF CANVASSERS OF ELECTION, AND A. G. KRONBERG, CITY CLERK, OF THE CITY OF DETROIT; HENRY SCHEHR v. SAME; AND JACOB F. MEIER v. SAME.

[Three cases.]

*Election—Board of canvassers—Mandamus.*

The duty of the city board of canvassers of election of Detroit is *purely clerical*,—to foot up the returns of the boards of inspectors, and declare the result, and issue certificates accordingly,—and the performance of this duty will be compelled by *mandamus*.

*Mandamus.* Argued November 18, 1890. Granted November 19, and opinion filed November 21, 1890.

Applications for *mandamus* to compel respondent board to declare relators elected to the office of alderman of their respective wards. The facts are stated in the opinion.

*Wisner, Speed & Harvey,* for relators.

*F. A. Baker*, for respondent Jacob.

*George H. Prentis*, respondent, in *pro. per.*

GRANT, J. Each of the above relators has applied to this Court, by petition, for the writ of *mandamus* to compel the respondent the board of city canvassers to assemble and declare him elected to the office of alderman.

Relator Coll was elected to fill a vacancy in the 16th ward of the city by a majority of 19 votes. Relator Schehr was elected by a majority of 45 votes; relator Meier by a majority of 39 votes. The boards of inspectors of election of the several precincts returned the number of votes cast for each candidate for alderman in the respective wards. These returns were duly filed, and the city board of canvassers of election met on the 8th of November to canvass the returns. They adjourned until November 10, without action. On November 10 the returns from said boards of inspectors were referred to a committee to foot up the returns for the respective persons voted for in the respective districts. This committee reported showing the above majorities for the relators respectively. The respondents refused to declare any result in the case of relator Coll. In the case of the other relators, their opponents, who received the minority of the votes cast, were, by a majority vote of the respondents, declared elected, and the petitions aver that it is the intention of the city clerk, respondent Kronberg, to issue certificates of election to their opponents. After the above action the board adjourned *sine die*.

Respondent Prentis answers denying that he acted with the majority, though the clerk records him as having voted with them. He has therefore purged himself from complicity with this infamous transaction. Of the other respondents, Jacob alone answers, admitting all the facts set up in the petition, and setting forth in detail what

transpired before the board of canvassers. No protest was made against the election of Coll, nor was there any pretense that he was not fairly and honestly elected.

In the case of relator Schehr, his opponent, Henry Gudeneau, filed a protest in which he claims that votes were illegally, unlawfully, and fraudulently cast for said Schehr by the unlawful use of money by said Schehr and his agents. In support of this protest he filed two affidavits, one by one Nickolas C. Youngblood, who swore that while he was talking to a voter on election day, who expressed a desire to vote for Gudeneau and had accepted a ticket from the deponent, and while said deponent and said voter were engaged in conversation, relator Schehr interfered and requested said voter to step aside with him; that they stepped aside, and that the deponent saw Schehr give to the voter some money. Youngblood heard none of the conversation, and does not even swear that the man, whose name he does not give, voted. The other affidavit was made by one John Fishcher, who swore that one Ruoff asked a voter under similar circumstances to step aside with him. He does not claim to have heard what was said, but he avers that Ruoff gave the voter one dollar, and he believes that it was given for and in behalf of relator Schehr, and accepted by the voter, whose name he does not give, as an inducement to vote for Schehr. This affidavit likewise does not state that the man voted.

A protest was filed by John Kessler, opposing candidate in the election against Meier, charging that he corruptly gave money to diverse and sundry persons, whose names were unknown to him, and who voted at the election, and that by reason thereof said Meier obtained his majority. His protest is sworn to, and is stated to be only upon information and belief. This protest was sup-

.ported by the affidavits of two boys, one 15 and the other 14 years old. One swore that he saw two men dressed like working men, each having a dinner basket, standing upon the sidewalk about 8 or 10 feet distant from the place where his comrade and himself were standing, and about 40 or 50 feet from the entrance to the polling place; that two men approached them and commenced talking with them; that, after a short conversation, one of these men called relator Meier to them. Meier approached and gave each of the two men who carried dinner baskets some money. Neither of the boys heard what was said, and neither swore that either of the men voted.

Without any investigation or attempt to ascertain the truth of these charges, the respondents, composing the board of canvassers, by a vote of 34 to 20, declared the opponents of relators Meier and Schehr elected. It thus appears that the majority of the respondents, whose duty is purely clerical,—to foot up the returns of the boards of inspectors, and declare the result, and issue certificates accordingly,—turned the canvassing board into a pretended court for the purpose of trying a question of fraud, and then determined it without swearing a witness, without any investigation, without any proof before them to substantiate the charges made, and, in short, without even the form or pretense of law or right.

Respondent Jacob says in his answer:

"This respondent, believing that said Henry Gudeneau and John Kessler were legally elected, in introducing a resolution declaring the result of the canvass of aldermen, included their names as aldermen elected from the 7th ward and from the 13th ward."

He further returns that he has submitted the above proceedings to an attorney at law, by whom he is advised that said board had no authority to take the action they did, and that it was their official duty to canvass and

declare the relators elected, which he says that he and the other respondents are now ready to do, when the time for so doing is fixed by this Court.

This conduct on the part of a majority of the respondents finds not even a shadow of law or decency to support it. It was wholly wrong in law and in morals. The respondents did not require the advice of an attorney to inform them of their duty and of the illegality of their action. They do not pretend that they did not know their duty before taking advice of counsel, nor that, at the time, they believed their action justifiable. Such a statement, if true, would be an impeachment of their intelligence. They confess the turpitude of their conduct by making no attempt to excuse or justify it. Their action was a willful attack upon the rights and liberties of the people, and a most wicked attempt to defeat the will of the people as expressed by their votes.

The relator Coll was entitled to his certificate immediately upon the canvass of the votes, and to take his place as a member of the common council. By this action of the majority of the respondents the people of the 16th ward are without representation, and meanwhile meetings of the council are being held and important business transacted. If respondent Kronberg has issued certificates to Kessler and Gudeneau, such certificates are absolutely worthless and void. They cannot be made a basis for the assertion of any right on their part. The relators are entitled to their certificates, and to the offices to which they were elected, until a better right thereto shall be established in some of the proceedings provided by law for that purpose, in which both parties can be heard.

Writs of *mandamus* will issue in each of the cases commanding the respondents to meet on Monday next, the 24th day of November, at 2 o'clock P. M., to canvass the

returns, declare the result, and issue the certificates to the relators. Each of the relators is entitled to recover the costs of these proceedings against those who voted to deny them their rights. Each member of the canvassing board is made a party respondent to this proceeding. It would be a denial of justice to compel the relators to resort to the courts at their own expense for the recovery of their rights, in which not only they, but the public, are alike interested. The record shows who of the respondents are responsible for the action of the board, and they must pay the costs. This does not include respondent Prentis, who has denied all complicity with the transaction.

The other Justices concurred.