ATTORNEY GENERAL *v.* BOARD OF SUPERVISORS OF
GENESEE COUNTY.

1. INTOXICATING LIQUORS—ELECTIONS—CANVASS—LOCAL OPTION—
SUPERVISORS—STATUTES.

In a local-option election, the board of supervisors, acting as a
board of canvassers, has authority merely to consider the poll
lists and returns of the inspectors of election districts, and
the statute, 2 Comp. Laws, § 5422, confers no authority to re-
quire the production of the ballot boxes or to recount the
votes or to consider affidavits of alleged irregularities.

2. SAME.

Canvassing boards as such may not exercise judicial functions.

3. SAME—VOTES—ILLEGALITY.

Illegal ballots may not be considered as a part of the total
votes cast in determining the number required to constitute
a majority.

4. SAME.

Mandamus will issue to compel the board of supervisors, acting
as election canvassers, to reconvene and determine the result
of a local-option election, where it refrained from reaching a
final determination on account of alleged irregularities and
errors in count, and adjourned after passing a resolution that
so stated.

HOOKER, J., dissenting.

Mandamus by Franz C. Kuhn, attorney general, on the
relation of Chester H. Bliss, against the board of super-
visors of Genesee county to compel said board to recon-
vene, canvass the vote, and announce the result of a
local-option election. Submitted April 28, 1911. (Calen-
dar No. 24,589.) Writ granted May 8, 1911.

*Franz C. Kuhn*, Attorney General (*Brennan, Cook
& Gundry*, of counsel), for relator.

*James S. Parker*, Prosecuting Attorney, *Ed. S. Lee*,
Assistant Prosecuting Attorney, for respondent board.

BIRD, J. The attorney general, upon the relation of
Chester H. Bliss, asks this court for a writ of mandamus

to compel the respondent to reconvene and canvass the vote cast upon the local-option question in that county on the first Monday in April of the present year. From the record it appears that since the 1st day of May, 1909, the local-option law has been in force in Genesee county. An election on that question was again authorized and held on the 3d day of April, 1911. Following the election the board of supervisors met to canvass the votes. The county clerk placed before them the statements of the votes filed in his office by the inspectors of the several election districts in the county. An examination of the statements disclosed that the whole number of votes cast on the proposition was 13,677; that 6,694 voted in favor of prohibition and 6,775 voted against it; and that 208 votes were rejected as blank and illegal. Much discussion and difference of opinion arose over the rejected ballots, and the board, being advised that it had the authority to recount the ballots, took steps to do so. In this attempt it was thwarted by the refusal of the city of Flint to surrender its ballot boxes. Not being able to make the recount and being uncertain what its duty was in the premises, it passed the following resolution and adjourned:

"Inasmuch as the report of the committee of the board shows a difference of about three hundred (300) between the number of votes cast in the several townships and wards as shown by the poll lists and the returns as made by the several boards of election inspectors as voting, and farther as shown by several affidavits filed with this board that contain irregularities have been allowed in several precincts of the county. Therefore, be it resolved, that we are unable to determine the result of said election satisfactory to ourselves without the examination of the ballots, but from the poll lists and returns on file with clerk, we do hereby determine and declare there was 13,677 votes cast upon the proposition, that 6,694 votes were cast 'Yes' for said proposition, and 6,755 votes were cast 'No' or against said proposition, and therefore we decline to make final decision at this time."

It is insisted by the relator that the board has a ministerial duty only to perform in canvassing the votes, and

that it has no power to go behind the returns and recount the votes, nor can it pass upon the alleged irregularities.

It is contended upon behalf of the respondent that its duty to determine and declare the vote carries with it the incidental power to make the determination from the best evidence obtainable thereon and, therefore, has the authority to recount the vote and consider the evidence of irregularities at the election. This variance of opinion as to the power of the board must be settled by the statute, which authorizes it to act in such capacity.

The section which defines the power of the board in such cases provides that:

" The board of supervisors of such county shall meet on the first Monday after such election to canvass the vote of the county, and shall ascertain, determine and declare the result thereof. At such meeting the county clerk shall lay before the board the statements of the votes of the several townships, wards and election districts filed with him, as above provided. Such canvass, determination and declaration of the result, together with a tabular statement of all the votes cast shall be entered in full upon the journal of their proceedings for that day, and the same shall be signed by the acting chairman and the clerk of the board: *Provided*, that if such statement or poll list shall not be made, certified or returned, as provided in section ten of this act, the board of supervisors, may, at such meeting, send for the same and require the same to be certified and made, the same, and with like power and authority, as the board of county canvassers at general elections." Section 5422, 2 Comp. Laws.

The statute makes it the duty of the board to canvass the votes, and the only data which the law provides shall be placed before it to enable it to discharge that duty are the statements of the votes and the poll lists. From these therefore we conclude the board must make its determination. The statements of the votes prepared by the inspectors show that there were 6,694 votes cast in favor of prohibition, 6,775 votes in opposition thereto, and 208 votes were rejected as illegal, the sum of which makes 13,677, the whole number of votes cast, as shown by the poll lists.

The question then presents itself, Shall the board accept as final the return of the inspectors that the 208 votes are illegal ? We think the return of the inspectors must be so accepted for the reason that the statute has provided no means for the board to make such an investigation. It will hardly do to say that the board may reverse, without evidence, a finding made by the inspectors from the evidence.

But it is argued that the board may have the evidence before it if it chooses; that it may cause the ballot boxes to be brought before it and recount the ballots, and may consider the affidavits showing irregularities at the election. The difficulty with this argument is that the legislature has conferred no such power on the board and it has no such implied power.

This court has held many times that canvassing boards, as such, may not exercise judicial functions. *Coll* v. *Board of Canvassers*, 83 Mich. 367 (47 N. W. 227); *McQuade* v. *Furgason*, 91 Mich. 438 (51 N. W. 1073); *Roemer* v. *Board of Canvassers*, 90 Mich. 27 (51 N. W. 267).

If the board must accept the finding of the inspectors that the 208 votes are illegal, can they be used in determining whether either side received a majority of the vote ? This question seems to be foreclosed by the holding of this court in *Wightman* v. *Village of Tecumseh*, 157 Mich. 326 (122 N. W. 122). In that case the vote was taken upon a proposed bond issue. There were 506 legal votes, of which 364 were for the loan and 142 against it, and 55 votes were rejected as illegal. It was urged by the complainant in that case that the 55 votes should be added to the legal votes for the purpose of determining whether the requisite two-thirds was obtained. Mr. Justice GRANT, in passing upon that contention said:

" The proposition was carried by the required two-thirds vote of the legal votes cast. Complainant does not contend that the 55 votes were improperly rejected, but insists that the legal electors voted these ballots, and

therefore they should be counted in estimating the two-thirds vote. In other words, he insists that these votes were valid for one purpose, but void for all others. The position is untenable. The statute makes all such votes void. A void vote is of no more effect than no vote. The case is the same as it would be if only 506 electors had voted."

Under the holding in this case, the 208 illegal votes should not be used for any purpose.

On behalf of the board, it is urged that the resolution passed just prior to adjournment is a final determination, and many cases are cited in support of the contention that, where the board has made a final determination of the election, the courts will not disturb it. If the board had made a final determination of the election, there would be much force in this contention, but it returns that it has made no determination, and further shows that, by reason of much conflicting advice, it was unable to decide, and therefore craves the advice of the courts. Under such circumstances mandamus will lie to compel it to discharge its statutory duty. *Coll* v. *Board of Canvassers, supra.* The writ will issue directing the board to reconvene and determine and declare the result of the election in compliance with the statute.

No costs will be allowed against the respondent, as it appears to have acted in good faith.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred with BIRD, J.

MOORE, J. I concur in the result because the case is controlled by the case of *Battle Creek Brewing Co.* v. *Supervisors of Calhoun County, ante,* 52 (131 N. W. 160).

HOOKER, J. I dissent from the views of Mr. Justice BIRD for the reasons expressed in my opinion in the case of *Battle Creek Brewing Co.* v. *Supervisors of Calhoun County, ante,* 52 (131 N. W. 160).