[File No. 6126.]

STATE OF NORTH DAKOTA ON THE RELATION OF
JAMES MORRIS, as Attorney General of the State of North
Dakota, Appellant, v. A. H. SHERMAN, as Auditor of the
County of Stutsman, North Dakota, Respondent.

(245 N. W. 877.)

Opinion filed December 13, 1932.

*James Morris,* Attorney General (*Scott Cameron* and *P. W. Lanier,* of counsel), for appellant.

*Russell D. Chase,* State's Attorney, *Harry E. Rittgers, B. F. Spalding* and *Dullam & Young,* for respondent.

PER CURIAM. This is a proceeding in mandamus to compel the defendant, as auditor, to submit for publication the delinquent tax list for 1932 in accordance with § 2189 of the 1925 Supplement to the Compiled Laws of 1913. After a hearing in district court an alternative writ of mandamus previously issued was quashed and the plaintiff appeals to this court. The sole question involved in the proceeding and on the appeal is whether or not § 2189 of the 1925 Supplement to the Compiled Laws of 1913, regulating the publication of notice of delinquent tax sale, has been superseded for the year 1932 by an initiated measure which was voted upon at the general election November 8, 1932. The measure thus voted upon prescribes a method for the publication of notice of the delinquent real estate tax sale different from that prescribed by § 2189, and it contains an express repeal of § 2189 and of all other acts and parts of acts in so far as in conflict. The last section of the initiated measure reads as follows: "This act shall take effect and be in force from and after the 8th day of November A. D. 1932 and shall apply to all delinquent tax sales for the year A. D. 1932 and subsequent years." The question is whether or not this section can be given effect as worded in view of § 25 of the Constitution, which provides, among other things, "And such law shall

go into effect on the 30th day after the election, unless otherwise specified in the measure."

The appellant contends that, in view of other expressions in § 25, the qualifying clause "unless otherwise specified in the measure" is only to be applied to effectuate a desire to postpone the taking effect of a measure beyond the 30th day and may not in any case shorten the period within which it may take effect to less than thirty days after the election. The respondent, on the other hand, contends that the act takes effect as therein stated.

The section of the Constitution in question governs both the initiative and referendum and covers the procedure with respect thereto quite fully. That it was intended to be so complete as to be operative without the aid of additional legislation, is made apparent by the statement in the concluding paragraph that the section shall be self-executing and all its provisions be treated as mandatory. It covers approximately a page and a half in the printed code, and for the purpose of understanding the contentions on this appeal only such portions of the section need be quoted as bear upon the question of interpretation presented. After providing for submission of measures to the electors and for a vote upon the same at a designated statewide election, or any special election called by the governor, it is stated:

". . . The result of the vote upon any measure shall be canvassed and declared by the board of canvassers.

"Any measure, except an emergency measure submitted to the electors of the state, shall become a law when approved by a majority of the votes cast thereon. And such law shall go into effect on the 30th day after the election, unless otherwise specified in the measure."

(It is elsewhere provided that an emergency measure is not suspended by a referendum petition.)

". . . . . . . . . . . .

"In (If) conflicting measures initated by or referred to the electors shall be approved by a majority of the votes cast thereon, the one receiving the highest number of affirmative votes shall become the law.

"The word 'measure' as used herein shall include any law or amendment thereto, resolution, legislative proposal or enactment of any character."

The appellant contends that the provision requiring the result of the

vote to be canvassed and declared recognizes the necessity for the completion of a canvass as a legislative step before the enactment can be said to have been completed and that when this requirement is read in light of the declaration that "such law shall go into effect on the 30th day after the election, unless otherwise specified in the measure," the reason for postponing the going into effect of the law for 30 days becomes apparent and is to enable all the mandatory steps in connection with the election to be taken. In light of this reason, it is argued, the qualification "unless otherwise specified in the measure" means that the law shall go into effect on the 30th day unless some date be specified beyond the 30th day, the period within that limit being one normally required for the canvass and declaration of the result. And to give it a construction which would enable legislation to take effect within such thirty-day period would be to defeat the manifest intention of this provision of the Constitution.

In support of this construction, modern legislative practice is invoked as showing the prevalence of fixed dates for the taking effect of legislative enactments to the end that normally a period may elapse between the vote of approval of legislation and the time of its taking effect within which the public or a class specially affected may be apprised of the terms of an enactment and be given an opportunity to conform to any new requirement. From this is excepted, of course, emergency legislation by the legislature which generally is permitted to take effect from approval.

As against these contentions the respondent argues that the qualifying clause "unless otherwise specified in the measure" permits the fixing of any date for a law to take effect following the closing of the polls; that no period need elapse within which the direction to canvass and declare the result may be carried out; and that whether or not a measure has been approved at the polls in any case where it is declared to be effective from the election date is a question of fact of which the court may require proof or of which it may take judicial notice. It is said the mere fact that in a given case there may be difficulty in determining judicially what the result of a state-wide election may have been, and consequent uncertainty as to the law, does not argue strongly against the legal possibility of putting an initiated measure in effect from the date of election, because situations frequently arise where

persons are held to the terms of a law with which they have had little or no opportunity to become familiar.

In resolving the question before us, we must not be unmindful that we are construing the fundamental law of the state. It is the source to which we must look for the governing rules with respect to the matters upon which it speaks. Every expression relating to such matters must be assumed to have been used deliberately. We must look to the entire section to determine the purpose manifested by the people in adopting it and to its various provisions in order to give the utmost effect to the means prescribed for making that purpose effective. We must not assume that any prescribed procedure is merely formal or of no substantial moment, especially if it may operate in harmony with the dominant purpose and conduce to its ordered enjoyment. Here, the dominant purpose manifested throughout the section is that of securing and safeguarding the right of the electors to legislate. We must avoid a construction contrary to this dominant purpose, but we must give effect, if possible, to every provision designed to facilitate its orderly operation. We must place to one side the thought that in the particular case there may be no doubt of the result of the election in advance of the canvass of votes; for whatever rule the Constitution lays down with respect to the time when a measure submitted to the electors may take effect is applicable of course, whether the measure carries by one vote or by one hundred thousand. If it prescribes a rule with respect to the former situation, it must, of course, be followed with respect to the latter.

The contentions of the respondent are to the effect that the Constitution lays down no rule governing the time when measures may go into effect, except one that is applicable where no time is fixed in the measure. Under these contentions, therefore, the court may not only be called upon to determine whether or not a given measure has been carried before the result can be ascertained from a canvass, but it may be required to determine the actual number of votes cast for conflicting provisions; for the Constitution declares that where conflicting provisions are approved the one receiving the highest number of affirmative votes shall become the law. While it is proper to consider the extent to which such a construction would detract from the meaning and effect of other express provisions, it is also appropriate to con-

sider the difficulties attendant thereon. It is reasonable to assume that in adopting the constitutional provisions in question it was the intention to furnish a guide which would be certain and definite with regard to the important matter of when a law should go into effect, rather that one which might involve the whole matter in inextricable doubt for a period of time.

Obviously, if a vote were so close as to give rise to a well founded doubt as to whether a measure had passed or had been defeated, or as to which of two conflicting measures had received the greater number of affirmative votes, the court could not take judicial notice of such a fact while shrouded in doubt, because it would not be a fact generally known. Such facts could not normally be known until the prescribed procedure for determining them had been had. Since the court, then, could not take judicial notice, the only alternative remaining would be to determine such facts by proof and this, obviously, might involve difficulties which would be all but insuperable. Under the respondent's contentions, therefore, the courts may be required (as we are asked to do here) to determine facts in advance of the canvass and declaration which are expressly required by the Constitution. Yet both the courts and the public might be subsequently bound by an official determination of the canvassing board to the contrary. Since the Constitution requires that the vote be canvassed and declared, it must be held to mean that the force ordinarily attaching to a canvass and declaration of the result is to be attached with regard to a submitted measure.

The determination of the result of an election is a function that ordinarily devolves upon administrative or ministerial officers and is not, under our system of government, normally conferred upon the courts. "Elections belong to the political branch of the government, and are beyond the control of the judicial power," in the absence of special legal authorization. 20 C. J. 209. It is in recognition of this division of power that provision has generally been made for canvassing boards to declare the results of elections. Such has been true during the entire history of the territory of Dakota and the state of North Dakota. A canvass is in itself ordinarily a part of the election, especially where the result is to be certified or declared.

Thus, in People ex rel. Conliss v. North, 72 N. Y. 124, where a

city charter provided that the city clerk should deliver statements and certificates to the common council at the meeting "which shall be on the Tuesday next after the annual election in each year, who shall upon such statements and certificates declare and determine what persons have been elected to the respective offices voted for at such election," the court held (page 128 of 72 N. Y.) "the declaration and certification of the common council is indispensable to the election and qualification of ward as well as city officers. . . . (page 129 of 72 N. Y.) The legislature can provide for the manner in which the result of an election shall be determined and declared, and their enactment is binding." The argument was advanced that as to ward officers the declaration of the result was unnecessary because power was given to the inspectors of the several wards to make statements determining and certifying the number of votes cast for each person and that, therefore, the declaration by the council was but a repetition of the prior determination of the inspectors. The court said that the power given to the inspectors "is not to declare who is duly elected, but simply to certify the number of votes cast for each candidate, while the power to determine, declare and certify which are duly elected is given solely to the common council.

"We cannot concur in the view that these provisions are only for the purpose of limiting the time within which the persons elected must take the oath of office. An examination of the whole section shows, we think, that its intention was to provide for the manner in which the election of the candidate should be consummated and officially declared; and that until these acts are done, his election is not complete, and he is not qualified to serve."

Similarly, in Dallas v. Dallas Consol. Street R. Co. 105 Tex. 337, 148 S. W. 292, where after an election was held for the purpose of voting upon an ordinance initiated by petition it was sought to interfere with the prescribed processes for determining the result, the court held (page 341):

"Elections belong to the political branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the court to determine their validity, and in cases of invalidity to protect property rights which may be wrongfully impaired if their result is suffered to become effective and is sought

to be enforced; but a proper deference for their respective powers that is imposed upon the several departments of the government, should constrain the courts to caution and certainty when their authority is invoked against the determination of the popular will."

In answering the question as to whether or not "the canvassing of the returns and declaring the result of the election involve a political question of which a court of equity will not take cognizance," the court said (page 341 of 105 Tex., 148 S. W. 292, 294):

"As elections are essentially the exercise of political power, it cannot be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the result; it is an integral part of the election itself, without which the election is a vain proceeding, and as such inheres as a right sanctioned by the political power, as absolute as the right of the electorate to vote or for the election to be held. When it is declared that because of their relation to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference; and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection." See also State ex rel. Minchan v. Thompson, 24 N. D. 273, 283, 139 N. W. 960; People ex rel. Ryan v. Nordheim, 99 Ill. 553; Re Dennett, 32 Me. 508, 54 Am. Dec. 602; McCrary, Elections, 4th ed. §§ 379, 398 and 399; 2 Spelling, Extr. Relief, §§ 1557 and 1559.

It is incongruous to suppose that the people, in adopting this constitutional provision, intended to bind themselves by a court decision upon so important a matter as the existence or non-existence of an effective law, which decision would rest upon data which are necessarily insufficient until properly compiled and certified, pending a final determination of such fact or facts by a board especially constituted for the purpose. It is equally incongruous to suppose that they were not mindful of these difficulties and that they had deliberately chosen to adopt a rule whereby they would bind themselves temporarily by an interlocutory determination of an unmentioned tribunal upon a matter which they have said should be determined and declared finally by a

designated body. Surely, the Constitution, to which we must look for definite rules governing legislative procedure, has not thus cast in doubt the very existence of a law. Surely, it does not mean that the public is bound today by a court decision that a law exists and discharged of obligation tomorrow by a decision of a designated body upon the same question.

Such incongruities are avoided by attaching the ordinary meaning to the mandatory language that the result upon any measure shall be convassed and declared by the board of canvassers and reading the same in connection with the following paragraph, which prescribes a time for a law taking effect that will ordinarily allow ample time for such canvass.

That such was the manifest intention is not in the least disproved by the suggestion that under existing election laws a longer period than thirty days might elapse, between the election date and the completion of the canvass; for, if the present laws are deficient in this respect, it is the clear duty of the legislature to make provision for an earlier canvass under the clause authorizing legislation to facilitate the operation of the initiative and referendum. Here, by express provision, a canvass is to be had. This canvass must be by "the board of canvassers" and not by the court. The result is to be "declared" by the same board and not by the court. We cannot give effect to these provisions by substituting the finding of an unmentioned tribunal, or by attempting to determine the result in a different way from that expressly provided. To give full effect to this provision of the Constitution and to preserve the separation of the powers of government heretofore obtaining and still evidenced by the language of this section, requires that pending the canvass and declaration no steps be taken in court which will, for the purpose of the proceeding, substitute the finding of the court for that of the designated tribunal. If this law, then, or any similar law, were to be put in effect prior to the thirtieth day, it would be as a result of the court's determination of a question which the Constitution says shall be determined by another body into whose hands such questions have been appropriately committed.

To some extent counsel for the respondent rely upon the rule of the English common law that an act of Parliament was deemed in effect from the first day of the session at which it was enacted. Start-

ing with this common law rule, it is argued that it is permissible for the legislature or for the people, in the exercise of legislative power, to provide when an enactment shall take effect, except in so far as the Constitution otherwise provides, and that any limitation upon the right should be clearly expressed. The common law rule had its origin in a legislative practice which has had little or no sanction in this country. The sessions of Parliament were treated as a continuous day, its rolls were made up after its adjournment and it had not been the custom to name any date except the date when Parliament assembled. There was, therefore, no day available to the courts from which to fix a different date as the effective date of a statute. See Turnipseed v. Jones, 101 Ala. 593, 14 So. 377; Lapeyre v. United States, 17 Wall. 191, 21 L. ed. 606. By statute in England in 1793, 33 Geo. III. chap. 13, the rule of the English common law in this respect was changed by reason of the "gross and manifest injustice of the rule."

In People ex rel. Campbell v. Clark, 1 Cal. 406, it is said that the rule of the common law has never been permitted by the courts of the United States to operate to the prejudice of the rights of citizens or the public. We are of the opinion that the rule of the English common law has so little force under the constitutional legislative processes in this country as to have no force in considering the meaning of the constitutional provision in question.

Counsel, while conceding the dearth of authorities in point, place principal reliance upon Bradley v. Union Bridge & Constr. Co. (C. C.) 185 Fed. 544, and State ex rel. Elsas v. Missouri Workmen's Comp. Commission, 318 Mo. 1004, 2 S. W. (2d) 796, as supporting their contentions, at least in principle. In the Bradley case the court had before it an employer's liability act adopted by the people of Oregon on November 8, 1910, through the initiative process. The plaintiff had been injured in an accident which occurred on November 9, 1910, and the question was whether the law became operative on the date of its adoption or not until the vote had been officially canvassed and the proclamation of the governor issued stating the result and declaring the law to be in force and effect, the latter procedure being provided in a law which had been enacted for carrying into effect the initiative and referendum. The Oregon Constitution (art. 4, § 1) provided as

follows: "Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise." It will be noticed that the Constitution did not provide for a canvass of the votes or a declaration of the result. Neither did it recognize the necessity for any period of time elapsing between the adoption of a measure and its going into effect.

The same is true of the Missouri case, where an identical constitutional provision was construed. It will be noticed, as indicated above, that this provision makes no distinction between the taking effect of a measure and its becoming the law. It says that it "shall take effect and become the law when it is approved by a majority of the votes cast thereon," and then, as if to make sure that no other date should be prescribed for either the taking effect or the completion of the enactment, it says "and not otherwise." It is difficult to conceive of a more conclusive expression than this. Furthermore, these cases came before the courts at a time subsequent to the completion of the canvass. So, the courts were not compelled to determine the result of the election in advance of a canvass as we are asked to do here.

Our Constitution, it must be remembered, states that a measure becomes a law when approved by a majority of the votes cast, but it provides that the same law shall not go into effect until the 30th day after the election, unless otherwise specified in the measure, thus recognizing the necessity for a period to elapse between the vote and the effective date of an enactment. We cannot find in our Constitution any provision indicating that an initiated measure may be so drawn as to take effect before the period has elapsed for the exercise of the constitutional processes for determining the result of the election. These processes are equally important to every measure, regardless of the date when it may be desirable to make it effective. The only provision that can with reason be thought to authorize an earlier effective date is the qualifying expression "unless otherwise specified in the measure." For the reasons indicated above, which we regard as conclusive, this expression cannot be given the effect contended for without detracting from the force of the ordinary and obvious meaning attaching to other portions of the section. It is our duty to give effect to every provision of the Constitution. In doing so we must here resort to an elementary rule of construction, applicable to constitutions and

statutes alike, and construe the various provisions as being consistent with each other. This requires that the sentence in question be read as prescribing the time when initiated measures take effect, viz., on the 30th day after the election, but that this rule shall not be arbitrary nor operate to prevent an act taking effect at another date specified in the measure, allowing only for the elapsing of the normal fixed time for canvassing the votes and declaring the result.

Since the measure in question will not be in effect until the thirtieth day after the election, § 2189 of the 1925 Supplement to the Compiled Laws of 1913 is not as yet repealed. It governs the publication of the notice of the delinquent tax sale, and a peremptory writ should have issued directing the delivery of the list for publication.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., concur.

BURR, J. (dissenting). I dissent. The issue is well stated in the majority opinion, the first eight paragraphs of which outline the scope of the inquiry in a manner with which we have no controversy.

Legislative enactments become operative upon their passage and approval, unless there is some expressed provision in the law or constitution to the contrary. State ex rel. Langer v. Olson, 44 N. D. 614, 627, 176 N. W. 528; People v. Clark, 1 Cal. 406; Gay v. Engebretsen, 158 Cal. 21, 26, 109 Pac. 876, 878, 139 Am. St. Rep. 67; Davis v. Whidden, 117 Cal. 618, 49 Pac. 766; Pacific Palisade Asso. v. Huntington Beach, 196 Cal. 211, 237 Pac. 538, 40 A.L.R. 782; Hobart v. Butte County, 17 Cal. 24, 31.

This rule applies to an initiated measure as well as to an act of the legislature.

That the expression "unless otherwise specified in the measure" does not necessarily imply a later date is shown in Fairchild v. Gwynee, 14 Abb. Pr. 121, 124. Here the court was required to determine when a law went into effect. "By the terms of the act of 13th April, 1860, it was to take effect immediately. . . . It is insisted that, as the Revised Statutes (1 Rev. Stat. 157, § 12) enact that 'every law unless a different time shall be prescribed therein, shall commence and take effect on and not before the twentieth day after the day of its final passage, as certified by the secretary of state,' . . . and that

as this act does not prescribe a different time, it did not go into effect until twenty days after the 13th of April, 1860. . . . If the legislature intended that it should not go into effect until twenty days after its final passage, it would either have expressly said so, or would have mentioned no time at all."

It may be argued that because this New York law said "and not before the twentieth day, etc," the possibility of an earlier date is foreseen, and the provision under consideration does not say "not before the thirtieth day after the election, unless, etc." But in State v. Mancke, 18 S. C. 81, 84, the court was required to construe the provisions of the act of 1879 (17 Stat. at L. 69) saying "no act—passed by the general assembly of this State—shall take effect or become of force until the twentieth day after its approval by the executive, unless some other day be specially named in the body of the act as the day upon which such act shall take effect," and its effect upon an act of 1880 which said that "from and after the passage of this act no license" should be issued. The court held that the latter law went into effect at the time specified in the act itself, even though it was earlier than the time fixed by the law. This was not based upon the theory that the act of a later legislature overruled the act of a former legislature, but upon the theory that it was within the exception approved by the law of 1879, that is that the phrase in the law of 1879 "unless some other date be specially named in the body of the act" could be a date earlier than the day set by law.

A similar holding is found in New York . . . in Re Chardavoyne, 5 Dem. 466, 10 N. Y. S. R. 193 [cited in 44 Century Dig. Col. 2912 (Statutes) § 336]. The court was determining when "Collateral Inheritance Act of 1885, chap. 483" took effect and the provision that "every law shall take effect on the twentieth day after its final passage, unless a different time shall be prescribed therein (1 N. Y. Rev. Stat. 7th ed. pt. 1, chap. 7, title 4, § 12) was under consideration. This phrase was held to include a prior date.

Much is said of the difficulty in ascertaining whether the law is in effect—that is the result of the election. Many a time it becomes important to determine the precise moment at which a law takes effect, and as said by Judge Story in Re Richardson ((C. C.) 2 Story, 580, Fed. Cas. 11,777, quoted in People v. Clark, 1 Cal. 406, supra): "It

may not, indeed, be easy in all cases to ascertain the very *punctum temporis*; but *that ought not to deprive the citizens of any rights created by antecedent laws and vesting rights in them.*"

The difficulty of knowing that a law is in effect does not prevent, the taking effect, even though impossible to know that the law took effect when passed. Branch Bank v. Murphy, 8 Ala. 119; Heard v. Heard, 8 Ga. 380. As said in State ex rel. Harness v. Roney, 82 Ohio St. 376, 92 N. E. 486, 487, 19 Ann. Cas. 918, 919: "The presumption is that the legislature intends the act to take effect at the time it declared the act should be in effect, and the court may not by construction substitute a different time merely to correct defective legislation." "To supply the intention and then give the statute effect according to such intention would not be construction but legislation." State ex rel. Harness v. Roney, supra; Slingluff v. Weaver, 66 Ohio St. 621, 64 N. E. 574; Lewis's Sutherland, Stat. Constr. 2d Ed. § 366.

The people, through the exercise of the reserved power of initiation, are as much a part of the law-making body as is the legislature. The acts of the people with reference to legislation are governed by constitutional provisions and the interpretation of these provisions is governed by similar rules.

It becomes important then to determine the effect of the other constitutional provisions quoted in the majority opinion.

We cannot ignore the extraordinary situation which arises here. The auditor, and others interested, knew that prior to the election there was in force a law requiring the publication of the delinquent tax list. The auditor said this law was repealed by an initiated measure which had been approved by the people on the 8th day of November, and which went into effect on the 9th day of November. The relator in effect admits this, but says that "no official vote has been announced and as to which none can be announced until after December 6, 1932, when the State Canvassing Board meets." Thus the issue is confined solely to whether such a law though approved, is in force.

The wisdom of having some reasonable time intervene between the enactment of such a law and its going into effect must be apparent to everyone, and must be considered. But that there should be such a time is for the legislature or the people to determine. But if no time intervenes it is because the people themselves stated an initiated

measure may go into effect on the date specified in the measure, and voted to put such a law into effect immediately—a law which depended for effect upon the approval of the people at a time when it would be difficult to secure proof as to this approval. It may be wise to have the Constitution amended to prevent such possibility; but it is not for us to correct such mistakes. That is something the legislature must do or the people do themselves. We but declare what they have said, and what they intend. The "Supreme Court cannot by mere force of opinion change the Constitution because some hardships may be occasioned by following it." State ex rel. Elsas v. Missouri Workmen's Comp. Commission, 318 Mo. 1004, 2 S. W. (2d) 796.

It is said that the requirement of canvass of the returns of the board of canvassers and the method of determining a possible conflict between initiated measures is such as to necessitate interpreting the phrase "unless otherwise specified in the measure" to mean "unless a later date be specified in the measure," or provided the result has been canvassed.

"The State Board of Canvassers, in canvassing election returns sent up by the boards of canvassers—performs a ministerial duty rather than a judicial function." Lansdon v. State Board of Canvassers, 18 Idaho, 596, 111 Pac. 133; Atty. Gen. v. Genesee County, 166 Mich. 61, 131 N. W. 163.

"Election laws are directory rather than mandatory, and must be liberally construed when necessary to effectuate the intention of the voters unless—that its omission shall render the election void." Kunkle v. Colman, 174 Ind. 315, 92 N. E. 61.

To ascertain the purposes of the people in adopting § 25 of the Constitution, as it now stands, we must take into consideration some facts not stated in the majority opinion.

The first constitutional expression of popular will regarding the initiative and referendum contained this provision—"Any measure referred to the people shall take effect when it is approved by a majority of the votes cast thereon and not otherwise, and shall be in force from the date of the official declaration of the vote."

It clearly had in mind the law in force at that time governing the canvass of the returns. It provided for a canvass of the returns and the declaration of the result, before the law would go in force.

At that time the canvassing board met "on the second Tuesday of

December next after a general election and within forty days after a special election." In view, apparently, of the adoption of this amendment the Legislature in 1915 changed the time of meeting after a general election from the second Tuesday to the first Tuesday in December and the meeting after a special election to "within thirty days after a special election." Section 1015, Comp. Laws and chapter 151 of the Session Laws of 1915.

Then as now, the state board of canvassers "may adjourn from day to day, not exceeding three days in all, except to await the return of a messenger dispatched—and then only for such time as may be necessary." Section 1017, Comp. Laws. The dispatch of this messenger is for the purpose of securing corrected returns from any county, or any precinct in a county. It is clear therefore that from 1915 on there was every possibility that the state board of canvassers would not meet and complete its work within thirty days after a general election. The fact is that in several of these election years the first Tuesday in December fell on a date more than thirty days after the election day. For example, the election of 1920 was held on the second of November and the first Tuesday in December came thirty-five days thereafter. The same situation existed in 1926 and it will in 1948 and later times.

In 1918 the people approved the present constitutional provision regarding the initiative and referendum. Instead of leaving the time when the law should go into effect to the uncertainty of the meeting of the board of canvassers and consequent delay which might be involved, and therefore uncertainty as to what was the law on a specific date, the people eliminated that provision and now say that "such law shall go into effect on the thirtieth day after the election, unless otherwise specified in the measure."

The original article inferred a canvass, for the law went into effect "from the date of the official declaration of the vote." The present one is much less specific for it says merely the "result of the vote upon any measure shall be convassed and declared by the board of canvassers," in fact eliminates the specific reference to effect following. Very evidently the people in adopting the present article, had in mind, the law regarding the board of canvassers, knew that the board at certain times would not meet within thirty days after the general

election, that the board might be delayed in its work and also that it could adjourn from time to time because of such delay, and hence no longer made the effect of a law dependent upon the action of the board. This must have been so because though the constitutional provision refers to the board of canvassers, it does not say how the board shall be constituted nor what rules shall govern it, nor when it shall meet. It did not need to do so because the people recognized there was already legislation and made provision in the amendment that "laws may be enacted to facilitate its operation." It recognized that there was a board of canvassers in existence at the time this constitutional provision was adopted; it recognized that this board is of statutory origin; it recognized by implication the law in effect at that time, specifying when the board shall meet, and it provides that legislation may be enacted to effectuate the plain purpose of this constitutional provision. If the people considered that the canvass was necessary to put a law into effect they knew existing legislation was not adequate. Either they intended no initiated law would go into effect until the result was declared or did not intend the canvass should affect the time. But no change has been made.

The majority opinion concedes that this measure in question will be in effect on the 9th of December, even though the board of canvassers may not have met and canvassed the returns at that time; but that the people could not have intended a law to go into effect on the day "specified in the measure" though so saying, but must have intended a later date, because of the constitutional provision referring to the board of canvassers. That is, if no date be specified in the measure it goes into effect on the thirtieth day after the election, regardless of the action of the board, but if a date be "specified in the measure" it must be a later date because of the board of canvassers. If important to know the result in one case it would be so also in the other. All the difficulties pointed out, based upon possible uncertainty of the vote, may still exist when the thirtieth day arrives. If no canvass has been made and the vote be concededly close, or two conflicting measures have been submitted to the voters and it is difficult to say which has received the larger vote, the measure goes into effect just the same, according to the majority opinion—and this is correct.

It is intimated that in case of a close issue the board of canvassers

could be compelled to meet prior to the thirtieth day and canvass the returns, thus preventing the uncertainty. But if this could be done so as to have certainty for the thirtieth day it could also be done for any day prior to the thirtieth day.

As the majority opinion says counsel for respondent cites and relies upon the case of Bradley v. Union Bridge & Constr. Co. (C. C.) 185 Fed. 544, which case the majority opinion seeks to differentiate from the case at bar on the theory that the Constitution of Oregon did not provide for a canvass of the votes or a declaration of the result in the matter of initiated legislation. The Constitution of Oregon says "any measure referred to the people, shall take effect and become a law when it is approved by a majority of the votes cast thereupon and not otherwise." Article 4, Section 1, Const. This was the provision in force when the law in the case cited was approved.

But the majority opinion overlooks one of the provisions of the Construction of Oregon. The constitutional provision (article 4, § 1) providing for the initiative was adopted in 1902 and says that in submitting a petition for initiative or referendum the Secretary of State "and all other officers, shall be guided by the general laws and the acts submitting this amendment, until legislation shall be specially provided therefor."

This takes into account a canvassing board, though less specific than our Constitution.

In 1907 the legislature of Oregon enacted a comprehensive law, chapter 226, Laws 1907, making the Secretary of State the canvassing board and required "the regular boards of judges, clerk and officers" of election to count, canvass and return the votes on such measures "as votes for candidates are counted, canvassed and returned, and the abstract made . . . shall be returned to the Secretary of State. It shall be the duty of the Secretary of State in the presence of the governor, to proceed within thirty days after the election, and sooner if the returns be all received, to canvass, the votes for each measure, and the governor shall forthwith issue his proclamation . . . declaring such measures as are approved to be in full force and effect as the law of the state on and from the date of said proclamation."

I find nothing in the Constitution of Oregon saying that the provisions regarding initiated measures are mandatory and self-executing

as found in our Constitution. In Stevens v. Benson, 50 Or. 269, 91 Pac. 527, the Oregon court said this law is in harmony with the constitutional provision for proper legislation to govern and direct initiated measures, yet held the constitutional provision was self-executing in intent though not in language, and says the constitutional provision that the Secretary of State shall be governed by the general law until further legislation be made "puts it beyond the power of the legislature to render them (the constitutional provisions) nugatory by refusing to enact legislation to carry them into effect"; citing Willis v. Mabon (Willis v. St. Paul Sanitation Co.) 48 Minn. 140, 50 N. W. 1110, 1111, 16 L.R.A. 281, 31 Am. St. Rep. 626. Because our legislature has not enacted legislation so that the result may be ascertained almost immediately is no reason for saying the expressed wish of the people must be delayed. Would the interpretation of this constitutional provision be different if there were such legislation for immediate action?

If the canvass of the returns be so important a factor that we must say the people did not really intend an initiated law to go into effect until after the result was canvassed then why say the law shall go into effect on the thirtieth day after the election, even if no canvass be had by that time? If it be of such vital importance then we should say the constitution means such "law shall go into effect on the thirtieth day if the result of the election has been declared by the board of canvassers." This would be in harmony with the expression that "a canvass is in itself ordinarily a part of an election" and would interpret the word "election" to mean a "completed election." It would also be in harmony with the provision of the article approved in 1914. But the people deliberately changed that and thus must have intended that the law should go into effect on a date certain—not a time dependent upon the act of the board of canvassers—but go into effect on the thirtieth day after the election, or on the date specified in the measure, as the people desire. One date is as specifically stated as the other.

There is no more power given the board of canvassers because the board is mentioned specifically in the constitutional provision than what is given by reference to legislation enacted under the authority of a constitutional provision to assist in the matter of carrying out the express wish of the people through initiated measures. If a law of

Oregon went into effect at the time of approval, even though the constitution said all officials (which of course included election officials) should be guided by the legislation in force or hereafter enacted, and even though the result could not be ascertained for thirty days, why should we consider that a constitutional reference to the canvass of the votes renders nugatory the provisions in our Constitution that the law shall go into effect at the time specified therein if the measure be approved by the people? Unless of course, we mean this is part of the "election," and in that event it would equally apply to the thirty day period. Again, this constitutional provision says, "This section shall be self-executing, and all of its provisions shall be treated as mandatory." Section 25. Where then do we treat as "mandatory" and self-executing the provision that an initiated law may go into effect at the time "specified in the measure," when we say it does not but must wait until thirty days after the election? So far as the law is concerned the phrase "specified in the measure" may as well be eliminated from the constitution, except for a later date.

In 1911 Arkansas adopted a constitutional provision regarding the time when initiated or referred legislation becomes effective, similar to Oregon, taking cognizance of election machinery in the same way. This law governing initiative and referendum provides for canvass of votes by State Board of Elections and proclamation thereafter by the governor, the canvassers, "to proceed within thirty days after the election, or sooner if the returns be received to canvass the votes given for each measure and certify immediately the result thereof to the Governor, and the Governor shall forthwith issue his proclamation—declaring such measures as are approved by a majority—to be in full force and effect as the law of the state—from the date of said proclamation."

Section 9775 of 1927 Code being § 16 of Act of June 1911, pages 582, 592. In Arkansas Tax Commission v. Moore, 103 Ark. 48, 145 S. W. 199, 201, the court said: "The people regarded it necessary to reserve such power, and knowing they would be impotent to compel their Legislature to make provision to carry into effect their will, upon a mandatory expression thereof even, they—directed in clear, concise and unequivocal terms the manner of submitting to the people the matters initiated and referred, and that in submitting them the Secre-

tary of State and all other officials 'shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided for.' Without any action by the legislature, laws could be initiated or referred in accordance with the terms of this constitutional amendment; and we hold it was clearly intended to be and is self-executing." (This case describes it as Amendment No. 10 but it is the same as Amendment No. 7.)

Our Constitution recognizes that an act may become a law at one time, and go into effect at a later day, for it says the initiated measure "shall become a law when approved by a majority of the votes cast thereon" and then makes provision as to when it shall go into effect, but if the provision with reference to a canvass of the results is such an integral part of the Constitution so that it may delay the time when the law takes effect—as is held by the majority—then why is not the result applicable to the term "approved by a majority of the votes" making a canvass part of the approval.

The rule laid down in People ex rel. Conliss v. North, 72 N. Y. 124, and Dallas v. Dallas Consol. Street R. Co. 105 Tex. 337, 148 S. W. 292, has little value for us except as it implies that an "election" is not finished and completed until the returns are canvassed, and in that sense might compel us to hold that when the Constitution says that an initiated measure shall go into effect "on the thirtieth day after the election" it means the completed election with the canvassed returns. Indeed such attempted construction was presented to the Supreme Court of Arkansas. It was claimed the canvass of the returns was necessary before the "completed adoption." The court said: "Its adoption does not depend upon the declaration of the speaker . . . or the publication by the Governor of his proclamation to that effect, as provided in § 142 of the Digest. If the speaker and the Governor were to neglect or refuse to discharge their duties under the statute, the amendment would nevertheless be a part of the Constitution of the State, because it is the will of the people expressed in the mode prescribed in the Constitution." The canvass of the returns before the declaration, the court said, belongs to that class of legislation which "is but a means of informing the people of the passage of an amendment. Neither the certificate, directed to be signed by the speaker of the House and the president of the Senate, to be filed in the office

of the Secretary of the State, nor the proclamation issued by the governor affect in any manner the adoption of the amendment." Matheny v. Independence County, 169 Ark. 925, 277 S. W. 22.

The court considers the powers and duties of the board of canvassers and the effect of such boards' determination on "the completed adoptions," but says "if the speaker and the Governor were to neglect or refuse to discharge their duties under the statute, the amendment would nevertheless be a part of the Constitution of the state, because it is the will of the people expressed in the mode prescribed in the Constitution," and further "In construing Constitution, words should be given their plain and common meaning, unless the context furnishes some ground to control, qualify or enlarge them."

The will of the people is not thwarted because official proof is not furnished. There is no difference between the meaning to be given to the terms when applicable to an initiated law than given to the same terms in connection with the constitutional amendment.

In Schall v. Bowman, 62 Ill. 321, the court was required to determine when certain sections of the new constitution went into force. The "schedule" of the Constitution in § 10 provided the form of ballot to be used, and § 11 provided that the returns on the election should be made and canvassed, and specified when this should be done, and also provided that some sections should be submitted separately and if said sections received a majority of the votes they became a part of the constitution from and after the day of election, and held "the separate articles voted, on receiving a majority of the votes cast, became ipso facto and so instante a part of the organic law of the State." It is true the matter did not come before the court until more than a year thereafter, but the court did not attach any importance to the provision in the constitution requiring a canvass of the votes, or even intimate this might delay the time when the provisions went into effect. The matter was peculiarly important in this that this separate constitutional provision prohibited "a county—or other municipality" from donating or loaning its credit to a private corporation or subscribing to the capital stock thereof, whereas prior to the adoption of these provisions those municipalities could so invest public money. On the day the election was held a vote was taken authorizing the city of East St. Louis to make such subscription, but at the

same time and at the same election these constitutional provisions were adopted. It became important to determine the time when the separate provisions took effect. The court said it went into effect immediately on the election that "there is no provision of the constitution requiring a different construction," and totally disregarded the constitutional reference to the canvass of returns.

The United States Supreme Court in Louisville v. Portsmouth Sav. Bank, 104 U. S. 469, 26 L. ed. 775, construes the Illinois decision to mean "that though the result of the election could not have been officially ascertained and declared before the expiration of some weeks from the election the provision relating to municipal aid to railroad corporations 'was so framed that it could appropriately and effectually become a part of the organic law—and was a declaration of the people on the second day of July (the day of the election) that from and after that day—no county shall ever—loan its credit in aid of such corporation.'"

In the case at bar the majority says the provision regarding canvass of votes is such as to read into the Constitution a meaning outside of the ordinary intendment of the words. If the view of the majority be sound then no law should go into effect until the thirtieth day, and not even then unless the returns have been canvassed and the result declared.

The majority opinion says this rule of interpretation laid down should "not be arbitrary nor operate to prevent an act taking effect at another date specified in the measure, allowing only for the elapsing of the normal fixed time for canvassing the votes and declaring the result." Then if the board of canvassers had announced the result five days after the election would this law be in force? If so then we should construe the Constitution to mean that the law goes into effect at the time "specified in the measure" providing the board of canvassers have declared the result by that time. Just what the effect would be on such a measure if the normal time fixed for canvassing the votes and declaring the result had elapsed and yet the canvass not made is not determined.

Because the result could not be ascertained definitely from the board of canvassers does not say that the law does not go into effect at the time the people say so. If it was the intention of the people to make the

thirtieth day after election the minimum, so that no law could go into effect before that time, or the canvass by the state board of canvassers was essential to the going into effect of a measure, then the language of the Constitution would have contained words which suggested such meaning.