KENNEDY *et al. v.* NEW YORK LIFE INS. CO.

(Division A. Feb. 8, 1937. Suggestion of Error Overruled March 22, 1937.)

[172 So. 743. No. 32570.]

**H. Talbot Odom,** of Greenwood, and **Butler & Snow,** of Jackson, for appellants.

Louis H. Cooke, of New York City, and Watkins & Eager, of Jackson, for appellee.

Argued orally by **H. Talbot Odom** and **Geo. Butler**, for appellant, and by **W. H. Watkins, Sr.**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is an action at law in which the appellants seek to recover on the double indemnity clause in an insurance policy issued by the appellee to John P. Kennedy, wherein the appellant, his widow, is the beneficiary. A demurrer to the declaration was sustained and, the appellant having declined to plead further, a final judgment was rendered dismissing the action.

The policy, made an exhibit to the declaration, provides for the payment to the beneficiary of $2,000 on the death of the insured "or Four Thousand Dollars (Double the Face of this Policy) if such death resulted from accident as defined under 'Double Indemnity' on the second page hereof and subject to the provisions therein set forth. . . . The Double Indemnity provided on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury. Double Indemnity shall not be payable if the Insured's death resulted from self-destruction, whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise; from committing an assault or felony; from war or any act incident thereto; from engaging in riot or insurrection;

from participation as a passenger or otherwise in aviation or aeronautics; or, directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury. The Company shall have the right and opportunity to examine the body, and to make an autopsy unless prohibited by law. . . . The total premium stated on the first page hereof includes a . . . annual premium of $2.00 for the Double Indemnity Benefit.''

The declaration alleges the payment by the appellee to the appellant of $2,000, but that the appellee denies liability under the double indemnity clause of the policy, and prays for a recovery thereon, in support of which the declaration further alleges ''that on August 6th, 1933, and when said policy of insurance was in full force and effect, that the insured, John P. Kennedy, died; that the death of the said John P. Kennedy resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means, that is to say, the said John P. Kennedy died as a result of mercurial poison, unlawfully, wilfully, feloniously, and with malice aforethought administered to him, the said John P. Kennedy, by a third person, to-wit: Dr. Sarah Ruth Dean, which said poison was contained in a supposedly harmless liquid, unlawfully, wilfully, feloniously and with malice aforethought given him, the said John P. Kennedy, by the said Dr. Dean, to be drunk by him, and which said liquid was drunk by him, the said John P. Kennedy, without any knowledge whatever that said liquid contained poison, or without any reason on his part to believe or suspect that the same contained poison, and death resulted to the said John P. Kennedy from said poison administered, as aforesaid; that the said Dr. Sarah Ruth Dean has since been indicted, tried and convicted in this Court for the

crime of murder of the said John P. Kennedy, because of her having administered said poison, as aforesaid, to him, the said John P. Kennedy, and the said conviction has been affirmed by the Supreme Court [Dean v. State, 173 Miss. 254, 160 So. 584, 162 So. 155], and the death of the said John P. Kennedy occurred within ninety (90) days after said poison was administered to him as aforesaid and within ninety (90) days after said injuries were inflicted upon him, as aforesaid."

The question for decision is, Was the death of the insured within the provisions of the policy that "double indemnity shall not be payable if the insured's death resulted . . . from the taking of poison . . . whether voluntary or otherwise?" Specifically, did the insured take poison, and if he did, was the taking within the meaning of the words "voluntary or otherwise?"

The word " 'take' has many shades of meaning; the precise meaning which it is to bear in any case depends upon the subject with respect to which it is used." 60 C. J. 1208. It is here used with reference to the reception into a human body of poison. Cf. State v. Stuart, 88 Miss. 406, 40 So. 1010. In this connection, the word "take," according to the lexicographers, means "to introduce or receive into one's body; to swallow, inhale, or imbibe, as to take food, drink, gas, snuff or medicine." The liquid containing the poison was here given to the insured by another, nevertheless when he accepted and drank it, it was taken by him. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S. W. 745, 64 L. R. A. 349, 104 Am. St. Rep. 857, 1 Ann. Cas. 252.

The declaration alleges that the poison was "administered to the insured by another," but it is clear from the declaration that the pleader meant thereby that the poison was given by another to the insured, and moreover the word "administer" in this connection can only mean "dispensed, served or supplied." But the appellant says, in substance, that if she is mistaken in saying

that the insured did not take the poison, then the taking was accidental within the meaning of the policy, because the insured, when he drank the liquid, did not know that it contained poison, and therefore did not intend to take it. It may be, as to which we express no opinion, that the taking of poison under such circumstances is not voluntary, but the policy does not stop with excluding the voluntary taking of poison, for the word "voluntary" therein is followed immediately by the words "or otherwise." "Otherwise" is a compound word, formed by adding the suffix "wise" to the word "other," and the word "wise" when used as an adverbial suffix denotes "way, manner, respect," Webster's New International Dictionary (2d Ed.); consequently, the word "otherwise" means "in a different manner; in another way; or in other ways; contrarily." Webster's op. cit.; 46 C. J. 1151. On its face, therefore, the policy excludes from its double liability clause death from the intentional or unintentional taking of poison. Such being the usual and ordinary meaning of the words "voluntary or otherwise," it must be here given them, unless the purpose for, and circumstances under, which they were here used indicate that a different meaning is applicable. 1 Restatement Contracts, section 235; Goosey v. Goosey, 48 Miss. 210; Mississippi Mutual Ins. Co. v. Ingram, 34 Miss. 215.

Counsel, however, invoke the rule that a writing must be interpreted as a whole, and say, in effect, that when this is here done it will appear that the death of the insured is within the policy's double indemnity clause. In support of this, they say "that the policy does not exclude liability for death caused by intentional injury inflicted on the insured by a third person, or death by murder of the insured." From this counsel say, in effect, that the words "voluntary or otherwise" should be construed as not intended to include an unintentional taking of poison by the insured, given him by another with intent

to kill and murder him. In further support of which they say that if the appellee had intended to exclude from the double indemnity clause the giving of poison by another to the insured with intent that he should take it and thereby cause his death, it could have so provided in apt language, setting forth what language the insured could have used for that purpose. It is true that the policy does not exclude all liability where the death of the insured is intentionally caused by another, but that fact is of little, if any, value in interpreting the particular clause of the policy here in question which doubles the insurer's liability for the death of the insured under particular circumstances. The circumstances, other than the death of the insured under which the double liability arises, have no bearing on the insurer's liability for the $2,000 payable without reference to the cause or manner of his death. It is also true that double liability for the death of the insured caused by the taking of poison, intentionally given to him by another for that purpose, could have been aptly excluded by language other than that used, but nevertheless the words "voluntary or otherwise" also clearly and aptly express the insurer's purpose so to do, and it had the right to select its own words therefor. In order to give the clause the construction put on it by the appellant, it would be necessary for us, under the guise of construing the policy, to add after the words "voluntary or otherwise" some such words as "unless given the insured by another with the intent that it should be taken by him." So to do would be, not to construe the policy but, to make a new one. King v. New York Life Ins. Co. (C. C. A.), 72 F. (2d) 620; Hawkeye Commercial Men's Association v. Christy (C. C. A.), 294 F. 208, 40 A. L. R. 46.

No case has been brought to our attention which, on its facts, covers the exact contention of counsel for the appellant, and the cases cited by them do not negative

but, on the contrary, support the conclusion at which we have arrived.

Affirmed.