[File No. 6758.]

McKENZIE COUNTY, a Public Corporation in the State of North Dakota, Plaintiff, v. J. S. LAMB, State Highway Commissioner of the State of North Dakota, Defendant.

(298 N. W. 241.)

Opinion filed May 22, 1941.

*Alvin C. Strutz,* Attorney General, and *W. A. Jacobson,* State's Attorney, for plaintiff.

*W. T. DePuy,* for defendant.

NUESSLE, J.   This proceeding in mandamus was begun in the district court of Burleigh county to compel the defendant Lamb, the State Highway Commissioner of the state of North Dakota, to approve a voucher drawn in favor of the plaintiff McKenzie county and payable out of an appropriation made by chapter 45, Session Laws 1941. (S. B. No. 189.)

The case now comes to this court for the determination of a certified question pursuant to the provisions of chapter 158 of the Code of Civil Procedure, being §§ 7849b1 to 7849b3, both inclusive, of the 1925 Supplement to the North Dakota 1913 Compiled Laws. ·

From the record before us it appears that the Great Northern Railway Company constructed a railway bridge across the Yellow-

stone river in McKenzie county. In 1937 the state of North Dakota instituted an action wherein it procured a judgment decreeing to it an easement over this bridge for public highway purposes. Thereafter the legislature appropriated moneys (see chap. 22, Sess. Laws 1939) for the purpose of making the bridge available for public use pursuant to the terms of this judgment. Among other things required to be done in that behalf was the construction of highway approaches to the bridge. In 1940, the defendant State Highway Commissioner, requested and directed the plaintiff McKenzie county to construct such approaches. The county complied with this direction. The appropriation provided by chapter 22, supra, was insufficient to cover this and other expenses incurred and the plaintiff's charge was not paid. The legislature in 1941 accordingly enacted chapter 45, supra, providing: "There is hereby appropriated out of any moneys in the state treasury belonging to the state highway commission not otherwise appropriated, the sum of $4,800.00 to pay for a portion of the cost of constructing a new highway approach to the Great Northern railway bridge across the Yellowstone river in McKenzie County, North Dakota.

"An emergency is hereby declared and this act shall take effect from and after its passage and approval."

Thereafter the plaintiff county presented to the Highway Commissioner its bill for the material and labor used and expended in the construction of these approaches and requested that the Commissioner approve a voucher therefor to the end that payment might be had out of the appropriation thus made. The Commissioner refused to do so solely on the ground that the act, chapter 45, supra, was unconstitutional and void, in that it contravened article 56 of the Amendments of the Constitution of the State of North Dakota, providing: "Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, after deduction of cost of administration and collection authorized by legislative appropriation only, and statutory refunds, shall be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways."

Thereupon plaintiff instituted this proceeding. The case was tried in the district court of Burleigh county without a jury. The facts were found substantially as above set out. The only matter in controversy between the parties was as to whether payment could properly be made pursuant to the legislative appropriation. The court held that the appropriation was valid and constitutional and that the writ should issue as prayed by the plaintiff. Whereupon the parties moved that the question of law thus determined by the trial court be certified to this court pursuant to the provisions of the statute, § 7849b1, 1925 Supplement. The court granted this motion and certified the question. In his certificate he stated that the question was vital and of great moment in said cause; that in the exercise of his sound discretion he considered the final determination of the issue presented to him depended wholly upon the construction and validity of chapter 45, supra; that he had determined said act to be constitutional and valid and wholly determinative of the issue in the action; wherefore, he had granted the motion to certify the question, to wit: Whether the legislature has the constitutional power to appropriate moneys in the state treasury belonging to the State Highway Commission and derived gasoline and other motor fuel excise and license taxation, motor vehicle registrations and license taxes, to pay for the construction, repair, and maintenance of public highways within the state not a part of the State Highway System.

It is contended that chapter 45, Session Laws 1941, supra, is unconstitutional and void for the reason that the appropriation of highway department funds for the purpose of maintaining a highway not a part of the State Highway System, constitutes a diversion of such funds contrary to the provisions of article 56 of the Amendments to the Constitution, supra. This contention is predicated on the premise that article 56 devotes the revenues derived from the gas taxes to use on the State Highway System as provided by law at the time of its adoption. We are of the opinion, however, that the premise is not true, so the contention must fail.

Chapter 159, Session Laws 1927, created the State Highway System. Section 1 of this chapter provides: "There is hereby created a system of main market, arterial and interstate public roads to be

known and designated as 'The State Highway System.' Such State Highway System shall not exceed seven per centum of the entire road mileage of the state, whether such roads be township, county or state roads, and in no case shall the State Highway System exceed 7,500 miles in length. As far as practicable such State Highway System shall connect all county seats, large trading centers and constitute part of national or interstate roads deemed necessary and essential for the promotion of commerce between the different states. . . ."

The terms "public highways" and "State Highway System" are not synonymous. All public roads are public highways, but only the roads designated by the Highway Commissioner as such are part of the State Highway System. The bridge here in question and the highways leading thereto have not been so designated, so it must be conceded that they are not a part of the State Highway System. They are, however, public highways, designated and built for and used by the public.

Article 56 of the Amendments, supra, was submitted by initiative petition and adopted by the people at the election held in June, 1940. It "freezes" all the revenues derived from gasoline and other motor fuel excise and license taxation and from motor vehicle registration and license taxes for use for public highway purposes. But it does not "freeze" all pre-existing statutes relating to such taxes and tax revenues into permanence. It dedicates the revenues in question to public highway purposes without any designation as to the particular highways on which they shall be used. It leaves to the legislature the allocation of such revenues.

The wording of article 56 of the Amendments speaks so plainly for itself that there can be no doubt as to its meaning and effect. And of course it prevails as against any legislative enactment. It says that this revenue so derived shall be used for public highway purposes and makes no distinction between public highways and the State Highway System. Were there any question as to the meaning and purpose of this amendment, then the history of its initiation and adoption and the causes that impelled the same, as well as the arguments advanced in its behalf at the time of its submission, would

wholly foreclose that question. The purpose of the amendment was to prevent any use of the gas revenues for other than highway purposes. Large sums had come into the treasury from the tax on motor vehicle fuel and from motor licenses and tax charges. On several occasions the legislature had appropriated most generously for other than highway purposes out of the funds thus accruing. The amendment was sponsored by the North Dakota County Commissioners Association. Prior to the election at which it was adopted it was published in the Publicity Pamphlet, pursuant to the provisions of the Constitution and the statutes (see article 26 of the Amendments of the Constitution, and §§ 924–927, inclusive, Comp. Laws 1913, and § 927a1, 1925 Supp.). Accompanying it in the Publicity Pamphlet were the arguments advanced by its sponsors in favor of its adoption. These clearly show that the sole purpose of the amendment was to dedicate the revenue from the gas tax to public highway purposes. There is no reference therein to the State Highway System. And it is inconceivable that the sponsors, county commissioners, particularly interested as they are in all public highways, intended to make it impossible for the legislature to say where and how on such highways this revenue should be used.

It is also argued that the State Highway Commissioner has no concern with and no jurisdiction over highways not within the State Highway System, and that the measure which levied the gas tax and appropriated its proceeds provides that such proceeds shall go to the highway department to be used in building and maintaining roads over which the Commissioner has jurisdiction. It is true that the measure in question so provides. But, after all, the Commissioner is the creature of the legislative will. So it was competent for the legislature by chapter 45, supra, to provide for payment of the plaintiff's bill for material furnished and labor done on the public highways at the direction of the Highway Commissioner, out of these funds belonging to the highway department. Having allocated the funds derived from the gas and motor vehicle taxes to the highway department, the legislature can also subsequently provide as to what shall be done (for highway purposes) with such funds and who shall carry out

the legislative mandate. And the Commissioner is in no position to challenge such exercise of the legislative power.

The question certified by the district court was rightly determined by that court. Accordingly, the case will be remanded for further proceedings not inconsistent with this opinion.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.