'NORTHWESTERN BELL TELEPHONE COMPANY, an Iowa corporation. Plaintiff and Respondent,

v.

.A. W. WENTZ, State Highway Commissioner, State of North Dakota, Defendant and Appellant.

No. 7856.

Supreme Court of North Dakota.

March 4, 1960.

On Rehearing May 26, 1960.

Cox, Pearce & Engebretson, Bismarck, for plaintiff and respondent.

Leslie R. Burgum, Atty. Gen., and Francis Breidenbach, Asst. Atty. Gen., for defendant and appellant.

TEIGEN, Judge.

This is a declaratory judgment action brought by the respondent (plaintiff), Northwestern Bell Telephone Company, an Iowa corporation, against the appellant (defendant), A. W. Wentz, as Highway Commissioner for the State of North Dakota, to determine the constitutionality of the relocation of utility facilities law, being Chapter 195 of the Session Laws of 1957 (Section 24–0141 of the 1957 Supplement to the NDRC of 1943), providing that utilities shall be reimbursed out of State Highway funds for costs of changing, removing or relocating utility facilities in connection with interstate and defense highway projects when determined and ordered by the State Highway Commissioner.

The facts were stipulated and may be summarized as follows:

1. The plaintiff is a foreign corporation licensed and qualified to carry on business in North Dakota. It is a privately owned public utility company as defined in the relocation of utility facilities law and engaged in furnishing telephone service in North Dakota.

2. The defendant is the duly appointed, qualified and acting State Highway Commissioner for North Dakota.

3. U. S. Highway No. 94, hereinafter referred to as Interstate Highway No. 94, is in process of construction and is a part of the North Dakota highway system and is a federally aided highway included in the National System of Interstate and Defense Highways and that portions of present U. S. Highway No. 10 and portions of rural highways are a part of Interstate Highway No. 94.

4. Between the years 1904 and 1950 plaintiff, by virtue of statutory authority and permission of proper governmental officials, placed telephone utility facilities along and across portions of the right of way of present U. S. Highway No. 10 and certain rural roads now a part of Interstate Highway No. 94 at many locations between a point about two miles east of Valley City and about one mile west of Jamestown, as shown by an exhibit agreed to be a true and correct representation.

5. The defendant and his predecessor in office ordered plaintiff to remove and relocate its telephone utility facilities on the right of way for said Interstate Highway No. 94 between the points shown on said exhibit.

6. That the relocating of the said telephone utility facilities in accordance with said orders was commenced and completed by plaintiff after the relocation of the utility facility's law became effective.

7. The defendant and his predecessor determined the utility facilities relocation was necessitated by the construction and location of said Interstate Highway No. 94.

8. Plaintiff delivered to defendant an itemized statement and billing of its non-betterment cost and requested payment in accordance with the provisions of said law.

9. If plaintiff is entitled to reimbursement under said law, all conditions precedent on plaintiff's part have been performed.

10. Defendant rejected statement and billing on ground that the defendant "had been advised that a payment of this claim would be in violation of the North Dakota Constitution" by Attorney General's opinion.

11. Defendant refused and still refuses to ascertain and determine the non-betterment costs.

12. That there are sufficient State Highway funds appropriated and available for the purpose, if the law is constitutional.

The respondent utility in its complaint prayed that the court declare and adjudge that such relocation of utility facilities law is valid as applied to the facts herein and that plaintiff is entitled to be reimbursed by defendant out of State Highway funds for the non-betterment costs of relocating its utility facilities on the right of way of Interstate Highway No. 94 between the points specified.

The appellant, State Highway Commissioner, in his answer and by way of affirmative defenses alleges:

1. That the respondent was ordered to remove its utility facilities by the appellant pursuant to the police powers of the state and not by the authority purportedly given in the relocation of utility facilities law.

2. That respondent at no time had any property right in having its utility lines located upon public highway right of way and had merely a temporary privilege of maintaining its facilities upon such right of way at the sufferance of the public officials, which privilege was granted without consideration having been paid by respondent.

3. That the respondent by complying with appellant's order has suffered no legal injury.

4. That the cost of removal of the utility's facilities from public highway right of way is not an expense of construction, reconstruction or maintenance of public roads.

5. That respondent is not a highway user entitled to any greater privilege than other highway users.

6. That plaintiff's claim for reimbursement for removing its facilities from public highway right of way is based solely on Section 24-0141 of the 1957 Supplement to NDRC of 1943 which is null and void and unconstitutional because:

a. It would permit the state to loan money, give its credit to or make donations to or in aid of the respondent, a private corporation, who is not one of the poor, in violation of Section 185 of the North Dakota Constitution.

b. It would permit a diversion of highway funds to a non-highway purpose in violation of Article 56 of the Amendments to the North Dakota Constitution.

c. It would confer upon the respondent a special privilege in violation of Sections 11, 20, 70 and Subsection 20 of Section 69 of the North Dakota Constitution.

d. It would abridge the police powers of the state in violation of Section 134 of the Constitution.

On the facts and the issues thus framed the matter was submitted to the district court. The district court concluded in favor of the validity of Section 24-0141 of the 1957 Supplement to NDRC of 1943 in the particulars as framed by the pleadings and the stipulation of facts and entered judgment adjudging the statute to be valid and constitutional, that the respondent is entitled to be reimbursed by the appellant out of State Highway funds for its non-betterment costs in relocating its utility facilities as described in the action and that the amount of reimbursement is to be determined in the manner provided by the said statute. The appellant has appealed from

the whole of the judgment and demands a trial de novo in this court of all of the issues of fact and law.

The appellant's specifications of error present the single issue of law, to wit, the constitutionality of Chapter 195 of the Session Laws of 1957, Section 24-0141, 1957 Supplement to the NDRC of 1943.

The statute thus questioned reads as follows:

"§ 1.) Whenever the state highway commissioner shall determine and order that any utility facility which now is, or hereafter may be, located in, over, along, or under the national system of interstate and defense highways, or urban extension thereof, qualifying for federal aid should be changed, removed or relocated to accommodate the construction of a project on the national system of interstate and defense highways, including extensions thereof within urban areas, the utility owning or operating such facility shall change, relocate or remove the same in accordance with the order of the state highway commissioner; provided that the costs of the change, relocation or removal, including the costs of installing such facilities in a new location, shall be ascertained and paid by the state out of state highway funds as part of the cost of such federally aided project, unless such payment would violate a legal contract between the utility and the state.

"§ 2.) The term 'utility' shall include all cooperatively, municipally, publicly or privately owned utilities, for supplying water, sewer, light, gas, power, telegraph, telephone, transit, pipe line, or like service to the public or any part thereof.

"§ 3.) 'Cost of change, relocation or removal' shall include the entire cost incurred by such utility properly attributable to such change, relocation or removal after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility.

"§ 4.) Nothing herein contained shall be construed to affect in any way the right of any utility to receive just compensation for the expense of changing, removing or relocating its facilities located in a private right of way.

"§ 5.) This Act is and shall be construed to be cumulative, independent legislation and complete in itself. All Acts heretofore enacted are repealed insofar as they are inconsistent with the provisions of this Act."

The above quoted statute was enacted by the North Dakota legislature to implement a provision of Section 111 of the Federal Aid Highway Act of 1956, 70 Stat. 383, 23 U.S.C., 1952 Edition, Supp. IV, Title 23, Section 162, which provided as follows:

"§ 162. Relocation of utility facilities—(a) Availability of funds for reimbursement to States.

"Subject to the conditions contained in this section, whenever a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project: Provided, That Federal funds shall not be apportioned to the States under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State.

"(b) Definition of 'utility.' For the purposes of this section, the term 'utility' shall include publicly, privately, and cooperatively owned utilities.

"(c) Definition of 'cost of relocation.' For the purposes of this section, the term 'cost of relocation' shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility. June 29, 1956, ch. 462, title I, § 111, 70 Stat. 383."

The Federal Statute was amended in 1958, Public Law 85–767, Section 1, 72 Stat. 900, 23 U.S.C.A. § 123. The 1958 amendment, however, has no application to the question before the court.

Since the enactment of the Federal Aid Highway Act of 1956, which also increased the federal share of the cost of constructing the interstate system to 90 percent, the North Dakota law was enacted.

Following the enactment of the federal statute in 1956 a number of states have considered legislation which would provide for payment by the state of the cost of relocating utility facilities located on highway right of ways. A number of them passed laws to accomplish this. Of those states that passed laws to take advantage of the federal legislation some relate only to the interstate system of highways, others relate to all federal aid highways, and in some limited cases the law relates to all state maintained highways. North Dakota's law is limited and applies only to projects on the interstate system. The Federal Aid Highway Act of 1956 authorized a new and enlarged federal aid highway program of far-reaching consequences and is one of the great construction projects of all times. The Act recognized the federal responsibility for the early completion of a national system of interstate and defense highways, a 41,000 mile system of highways of great importance to the nation as a whole, by providing that the federal government pay 90 percent of the cost of this segment of our highway system. It is recognized that there were valid economic reasons for the states to amend their laws in view of the invitation extended by the federal Act. A crash program of unprecedented scale had been inaugurated. In addition the type of construction changed. The modern multilane highspeed traffic ways require right of ways of spectacular width, cloverleafs, overpasses and underpasses, and long distances thereof through rural and urban areas. These changes brought about extraordinary expenditures for moving vast amounts of utility facilities at a great cost.

Following the passage of the Act of 1956, including Section 111 thereof providing for the relocation of utility facilities as set forth above, 40 states during 1956 and 1957 legislative assemblies considered legislation which would provide for the payment by the state of the cost of relocating public utility facilities. Legislation was passed in 22 states but vetoed in 6 states. It became law in 16 states in those two years. However only one of the 16 states provided that it would pay the cost of relocating utility facilities on all state maintained highways. Five related to all federal aid projects and 10 related to the projects of the interstate system only. Two states adopted laws which limited reimbursement to municipally owned facilities and two gave to the highway authority discretion in the matter of whether or not utilities should be reimbursed for relocating their facilities. Some of the states provided in their laws that reimbursement for the relocation of utility facilities on highway right of ways would be paid only in the event that it qualified for federal reimbursement. Our law has no such qualifications. We feel safe in concluding that such legislation came into existence principally because of the Federal Aid Highway Act of 1956.

The appellant's specifications of error on this appeal are the same as the causes set forth in the answer alleging reasons for the unconstitutionality of the statute.

Appellant represents, first, that the statute is unconstitutional because it is in vio-

lation of Section 185 of the North Dakota Constitution which in part reads:

"* * * Neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, * * ".

Only this quoted part of Section 185 of the Constitution has been cited or argued by the parties. We find that the entire section must be construed as a whole in order to ascertain its meaning. It is the source to which we must look for the governing rule with respect to the matters upon which it speaks. State ex rel. Morris v. Sherman, 63 N.D. 9, 245 N.W. 877; Goodwin v. County of Allegheny, 182 Pa.Super. 28, 125 A.2d 640.

Section 185 of the Constitution provides:

"The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by article 20 of the constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation."

As originally adopted Section 185 read:

"Neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation, nor shall the state engage in any work of internal improvement unless authorized by a two-thirds vote of the people."

It was first amended in 1914 by adding thereto:

"Provided, that the state may appropriate money in the treasury or to be thereafter raised by taxation for the construction or improvement of public highways." Laws 1914, p. 403.

Thereafter it was amended to its present form by Article 32 of the Amendments to the Constitution, approved and ratified at the general election on November 5, 1918.

A state constitution is not a grant but a limitation on legislative power, so that the legislature may enact any law not expressly or inferentially prohibited by the constitution of the state or the nation. Kessler v. Thompson, N.D., 75 N.W.2d 172; State ex rel. Gaulke v. Turner, 37 N.D. 635, 164 N.W. 924; Baird v. Burke County, 53 N.D. 140, 205 N.W. 17; State ex rel. Rausch v. Amerada Petroleum Corp., 78 N.D. 247, 49 N.W.2d 14.

"Generally speaking, principles of construction applicable to statutes are also applicable to constitutions, but not to the extent of defeating the purpose for which a constitution is drawn." 16 C.J.S. Constitutional Law § 15, p. 71; Egbert v. City of Dunseith, 74 N.D. 1, 24 N.W.2d 907, 168 A.L.R. 621.

The constitution of the state is its paramount law. It is a self-imposed restraint upon the people of the state in the exercise of their governmental sovereign power, either by themselves through the initiative or by their agency, the legislature. See Egbert v. City of Dunseith, supra; State v. First State Bank, 52 N.D. 231, 202 N.W. 391; Baird v. Burke County, 53 N.D. 140, 205 N.W. 17; State v. Houge, 67 N.D. 251, 271 N.W. 677.

A constitution, like other laws, is subject to construction by the courts, but it is a cardinal rule of construction that a constitution must be so construed as to give effect to the intention of the people

who adopted it. Egbert v. City of Dunseith, supra; Barry v. Traux, 13 N.D. 131, 99 N.W. 769, 65 L.R.A. 762, 112 Am.St. Rep. 662, 3 Ann.Cas. 191.

The original constitution provided that the state may engage in any work of internal improvements only if authorized by a two-thirds vote of the people. The 1914 amendment narrowed the limitation and removed the two-thirds vote requirement relative to the construction and improvement of public highways as an internal improvement. The 1918 amendment removed the limitation upon the legislature to make internal improvements. This amendment also provided that the state could undertake an adventure and engage in any industry, enterprise or business. The subsequent legislature, 1919, Laws 1919, c. 147, established the Bank of North Dakota, authorized the Commissioner of Agriculture and Labor to operate and manage a creamery for experimental purposes and to engage in activities connected with or incident to the manufacturing and marketing of dairy products, provided for the establishment of an enterprise of providing homes for its residents, under a business system named the Home Building Association of North Dakota; it established the Industrial Commission, authorizing it to conduct and manage utilities, enterprises, industries and business projects; it provided for the establishment and operation of the North Dakota Mill and Elevator Association, provided for the establishment of a Hail Insurance Department, Workmen's Compensation Bureau and County Fairs. This legislature also extended the powers and duties of the State Highway Commission and authorized it to purchase right of ways, materials and machinery for the construction of highways, provided the state may vacate any land or part thereof or right in land which has been taken or acquired for highway purposes and that such vacations would revest the title in the persons, their heirs, successors or assigns in whom it was vested at the time of the taking. Reference has been made to the passage of this legislation immediately following the ratification of the constitutional amendment as we believe it evidences the general purpose the proponents thereof advocated on its behalf.

■ It is common knowledge that a state or anyone else cannot successfully engage in an industry, an enterprise or a business without in some manner being involved in a loan, the giving of its credit or the making of donations, and that in some circumstances it might be advisable to become the owner of capital stock in an association or corporation.

Construing the language of Section 185 of the Constitution as amended its intent is perfectly clear. It first states:

"The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by Article 20 of the constitution, * * *."

The language is positive; it seems to grant a legislative power. However, its purpose is to set forth an exception to the limitation that follows.

The section then states:

"but neither the state nor any political subdivision thereof shall otherwise * * *"

and these words are followed by the words of restriction or limitation argued in this case.

The word "but" is used conjunctively in the sense of "on the contrary," and connects two clauses of the sentence in such a way as to make the last one modify or give meaning to the first, indicating that that which follows is an exception to that which has gone before. It further indicates that that which has gone before does not control that which follows.

The word "neither" is used as the negative of "either," meaning "not one nor the other." It is inclusive and imperative and

includes both the state as one class and any political subdivision thereof as the other.

■ The word "shall" as used in constitutions and statutes is ordinarily mandatory but where it is necessary to give effect to the intent the word will be construed as "may." City of Colorado Springs v. Street, 81 Colo. 181, 254 P. 440. In this instance the word "shall" directs a negative because it is preceded by the word "neither" and provides a limitation by words that follow it upon that which has been said before, so in order to give effect to the intent of the word "shall" it must be construed as "may."

■ The word "otherwise" is a compound word formed by adding the suffix "wise" to the word "other", and the word "wise" when used as an adverbial suffix denotes way, manner, respect. Thus the word "otherwise" means in a different manner, in another way, or in other ways; contrarily. Kennedy v. New York Life Ins. Co., 178 Miss. 258, 172 So. 743.

The word "otherwise" refers to "may make internal improvements and may engage in any industry, enterprise or business, * * *." Therefore the limitation placed upon the legislative bodies of the governmental units named in the section does not apply to legislation for the making of internal improvements or engaging in industry, enterprise or business. This is particularly true in considering legislation providing for an onerous donation, which is one burdened with some charge imposed upon the donee and which charge has a direct relation to the internal improvement in question.

■ The language construed may therefore be stated as follows:

"On the contrary, the state or any political subdivision thereof may not in a different manner or in another way loan or give its credit or make donations, etc."

This is clearly the intent expressed by the language of the section when construed together. Thus it specifically exempted from its limitations internal improvements.

For the reasons set forth it is of no concern to this court whether Section 24–0141 of the 1957 Supplement to NDRC 1943 does or does not provide for a donation or an extension of credit.

■ The state may make internal improvements. The construction and maintenance of state highways constitutes the making of internal improvements. Utilities may locate certain facilities upon the right of ways of state highways with consent under rules and regulations of the granting power. Sections 24 and 25, Chapter 159, Session Laws 1927.

■ The state may order the utilities to relocate such facilities at the utilities' expense under the common law. New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S. Ct. 471, 49 L.Ed. 831; Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa.Super. 529, 12 A.2d 479; New Jersey Bell Telephone Co. v. Delaware River Joint Commission, 125 N.J.L. 235, 15 A.2d 221; In re Delaware River Joint Commission, 342 Pa. 119, 19 A.2d 278; Delaware River Port Authority v. Pennsylvania Public Utility Commission, 393 Pa. 639, 145 A.2d 172; Transit Commission v. Long Island R. Co., 253 N.Y. 345, 171 N.E. 565; In re Elimination of Highway Railroad Crossing, 259 App.Div. 141, 18 N.Y.S.2d 613, affirmed In re Lehigh Valley R. Co. and Union Road, 283 N.Y. 687, 28 N.E.2d 409; Southern California Gas Co. v. City of Los Angeles, 50 Cal. 2d 713, 329 P.2d 289; Anderson v. Stuarts Draft Water Company, 197 Va. 36, 87 S. E.2d 756; Opinion of the Justices, 152 Me. 449, 132 A.2d 440; State v. Southern Bell Telephone and Telegraph Co., Tenn., 319 S.W.2d 90; State ex rel. Rich v. Idaho Power Company, Idaho, 346 P.2d 596; State v. City of Austin (State v. City of Dallas), Tex., 331 S.W.2d 737.

▆ The state therefore would not have to pay this cost, but if the legislature determined, as it has in this instance, that the non-betterment costs should be paid by the state (there is no qualification in our statute that there has to be federal reimbursement in any amount) on interstate highways, it is our opinion that to do so will not violate the provisions of Section 185 of the Constitution.

▆ The appellant next argues that the Reimbursement Act is unconstitutional as an attempted disbursement of highway funds for a non-highway purpose and cites in support thereof Article 56 of the Amendments to the Constitution, which provides:

"Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, after deduction of cost of administration and collection authorized by legislative appropriation only, and statutory refunds, shall be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, and the payment of obligations incurred in the construction, reconstruction, repair, and maintenance of public highways."

The legislature when it passed Chapter 195 of the Session Laws of 1957 (Section 24–0141 of the 1957 Supplement to NDRC 1943) in clear language specified the relocation cost as a part of the cost of the highway when it stated:

"provided that the cost of the change, relocation or removal, including the cost of installing such facilities in a new location, shall be ascertained and paid *by the state out of state highway funds as part of the cost of such federally aided project,* * * *".

Congress also considered such an expenditure a part of the cost of construction. On page 2900 of U.S.Code, Congressional and Administrative News, 84th Congress, Second Session 1956, Volume 2, Legislative History, as a part of Conference Report No. 2436, it is stated:

"Under the existing practice of the Bureau of Public Roads, Federal funds may participate in utility relocation costs to the same extent as other construction costs. * * *"

It appears to us that by legislative enactment such payment when ordered pursuant to the reimbursement statute constitutes a "payment of obligations incurred in the construction, * * * of public highways."

The appellant argues that neither the removal of utilities nor reimbursement of their relocation expense is necessary to the building of a highway except where the utility owns the land upon which their facilities are located, and then payment may be made under Section 14 of the Constitution.

The courts of other jurisdictions are rather evenly divided on the question. Two have expressed the view that costs of relocation cannot be paid with funds that are authorized to be used for highway construction. Opinion of the Justices, 152 Me. 449, 132 A.2d 440; Mulkey v. Quillian, 213 Ga. 507, 100 S.E.2d 268. Three states have held the language of the constitution should not be given such a narrow construction: Minneapolis Gas Company v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642; Opinion of the Justices, 101 N.H. 527, 132 A.2d 613; Texas v. City of Austin, and Texas v. City of Dallas, supra.

It seems to us that the latter conclusion is sound in principle and supported by the better reasoning.

▆ Article 56 of the Amendments to the Constitution speaks clearly by its language. The purpose of the amendment was to prevent any use of gasoline taxes for other than highway purposes and the payment of obligations incurred therefor. McKenzie County v. Lamb, 70 N.D. 782, 298 N.W. 241. Any portion of the money

in this constitutional fund may be used for the payment of obligations. State ex rel. Syvertson v. Jones, 74 N.D. 465, 23 N.W. 2d 54. The legislature created an obligation upon the fund to reimburse utilities for their non-betterment costs in relocating facilities along and across the interstate system. We need not determine whether this constitutes a donation, because if it is, it is an onerous one. It is made subject to the charge that the utility remove, relocate or change its facilities to accommodate the construction of the highway and designated as a part of the cost thereof. It is an obligation incurred in the construction of a public highway. The expenditure from the fund is made necessary by the commissioner's order to remove, relocate or change utility facilities to accommodate the construction. Article 56 of the Amendments to the Constitution does not define or restrict the meaning of "construction" in any way. We believe it embraces "everything appropriately connected with, and necessarily incidental to, to complete accomplishment of the general purpose for which the fund exists." See 40 C.J.S. Highways § 176h (2) (a); State ex rel. Syvertson v. Jones, supra.

██ The appellant next contends that the reimbursement law is in violation of Sections 11, 20, 70 and Subsection 20 of Section 69 of the North Dakota Constitution in that it accords special privilege.

The statute expressly applies to "all cooperatively, municipally, publicly or privately owned utilities, for supplying water, sewer, light, gas, power, telegraph, telephone, transit, pipe line, or like service to the public or any part thereof." This appears to us to be all-inclusive and it has not been pointed out that there are any exclusions. It is a general law of uniform operation as provided by Section 11 of the Constitution.

Further it appears that the law applies uniformly and generally throughout the state and wherever the national system of interstate and defense highways or urban extensions thereof qualifying for federal aid may be located, and is equally applicable to all kinds of utilities whether cooperatively, municipally, publicly or privately owned. Thus all who are similarly situated are similarly treated. We do not believe it contravenes Section 20 of the Constitution.

The reimbursement statute is not a special law within the meaning of Sections 69 and 70 of the Constitution. It operates alike on all places and persons that come within its provisions.

Appellant argues that because the reimbursement law is operative only insofar as the interstate highway system is concerned and therefore selects only those utilities that may be affected by an interstate system of the type described in the statute, and which system is but a small part of the entire highway system or systems within the state, that therefore it constitutes an arbitrary classification favoring only a few because of their accidental location. However, we feel there is reasonable classification adopted. We are not concerned with the wisdom of the legislation. Legislative discretion, as to classification, must be looked at from the standpoint of the legislature enacting it; it is primarily a legislative question. It is not subject to review by the courts except to the extent of determining whether the classification adopted is arbitrary, unreasonable and unjust. The classification of these highways under the interstate system separately from other routes of the state highway system is based upon substantial distinctions which set this type of highway apart from the others. It reflects a reasonable classification. It bears alike upon all persons and things upon which it operates and it contains no provision that will exclude or impede this uniform operation upon all citizens, subjects and places within the state provided they are brought within the relations and circumstances specified in the statute. Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849.

Lastly the appellant urges that the reimbursement statute abridges the police powers of the state and is therefore contrary to Section 134 of the Constitution. It argues the natural effect of the reimbursement law is to attach a condition upon the exercise of the police power inherent in the state through the common law to order a utility to remove its facilities from highway right of ways without compensation. The condition which is attached is the payment of the non-betterment costs. The police power inherent under the common law is not destroyed by the reimbursement statute. The statute specifically gives the commissioner statutory power to order the removal, relocation or change of the utility facility. The state in no way has bartered or bargained away its right to use the police power and has not divested itself of the power to remove utility facilities without payment, as the law may be repealed by any subsequent legislature. The statute while in force is not invalid as a surrender or an abridgment of the state's police power. 74 C.J.S.

Railroads § 165(d), p. 641; Missouri, K. & T. Ry. Co. v. State of Oklahoma, 271 U.S. 303, 46 S.Ct. 517, 70 L.Ed. 957.

For the reasons set forth in this opinion the judgment of the district court is affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.

On Rehearing.

TEIGEN, Judge.

We granted a rehearing in this case on petition of the appellant. After reargument and a reconsideration of the issues discussed in the briefs and consideration of the issues raised in the petition for rehearing and in the reargument, we adhere to our former opinion.

SATHRE, C. J., and BURKE, MORRIS, and STRUTZ, JJ., concur.