Harold NEWMAN, for himself and other taxpayers of the State of North Dakota similarly situated, Plaintiff and Appellant,

v.

Walter HJELLE, Highway Commissioner of the State of North Dakota, and R. E. Bradley, Chief Engineer of the State Highway Department of the State of North Dakota, Defendants and Respondents.

No. 8201.

Supreme Court of North Dakota.

March 4, 1965

---

Zuger, Zuger & Bucklin, Bismarck, for appellant.

Helgi Johanneson, Atty. Gen., and Vernon R. Pederson, Asst. Atty. Gen., Bismarck, for respondents.

TEIGEN, Judge.

This appeal is from a judgment dismissing plaintiff's complaint. The proceeding was on motion under Rule 12(b), North Dakota Rules of Civil Procedure.

The plaintiff by his complaint seeks to restrain and enjoin the defendants from using revenues from gasoline and other motor fuel excise and license taxation, motor ·vehicle registration and license taxes for the purchase or acquisition of advertising and sign control rights outside of the access right of way of Interstate Highway No. 94. Plaintiff also prays for a declaratory judgment declaring said revenue cannot be used by the highway commissioner or chief engineer of the highway department to control the advertising rights within highway rights of way nor outside of the highway rights of way.

The complaint alleges that Article 56 of the Constitution declares that revenues from the above-described sources shall be used "solely for construction, reconstruction, repair and maintenance of public highways." The complaint further alleges that the legislature has not appropriated moneys to acquire or control advertising rights in this State; that the defendants have used and are using moneys derived from the above-described sources for the purpose of acquiring all rights to control the erection, location or maintenance of signs, or any form of advertising, within 660 feet on both sides of the outer access right-of-way limits of Interstate Highway No. 94; that such is an unlawful and unconstitutional use of such funds and in violation of Article 56 and Section 186 of Article 12 of the Constitution; and that the purchase or acquisition of advertising control rights outside of the right-of-way limits is not a cost of construction, reconstruction, repair or maintenance of a public highway. The complaint also alleges that the defendants intend to persist in their unlawful course of action despite warnings and will continue to do so in the future, unless restrained by the court.

Plaintiff alleges that he owns and operates a motor vehicle and pays gasoline, other motor fuel excise and license taxation, and motor vehicle and license taxes; that he and others similarly situated have an interest in seeing that said taxes are used for the purposes limited by the constitutional provisions aforesaid; and that the acts complained of produce injury to the plaintiff and others similarly situated.

The defendants exercised the option permitted under Rule 12(b), North Dakota Rules of Civil Procedure, before serving a responsive pleading to assert by motion the following defenses: (1) Lack of jurisdiction over the subject matter; (2) Insufficiency of Process; (3) Insufficiency of service of process; and (4) Failure to state a claim upon which relief can be granted. Defendants prayed for a dismissal of the complaint.

No matters outside the pleadings were presented to or considered by the court.

Following a hearing on the motion, the court issued its memorandum and supplementary memorandum opinions, which were followed by findings of fact, conclusions of law and order for judgment, and a judgment dismissing the complaint.

The plaintiff has appealed and has asked trial de novo in this court.

Dismissal of the complaint was ordered on the ground of "failure [of the complaint] to state a claim upon which relief can be granted."

Although the issues are not raised on this appeal, we are nevertheless met at the threshold of this appeal with two practice questions: (1) Is a trial de novo available on this appeal; and (2) Was it proper for the lower court to make findings of fact and conclusions of law in this case?

We find that trial de novo is not available in this case. Section 28–27–32, NDCC, provides that on appeal in any action *tried* by the court, without a jury, whether triable to a jury or not upon specified questions of fact or demand for a retrial of the entire case, the Supreme Court shall try anew the questions of fact specified in the statement of the entire case and finally dispose of the same whenever justice can be done without a new trial. In this case there was no trial. Issue has not been joined. No responsive pleading has been served or filed and no matters outside of the pleading were presented to or considered by the court. Nor is it a summary judgment proceeding under Rule 56 or Rule 12(b), North Dakota Rules of Civil Procedure. The court had before it for consideration the summons, the complaint, the proof of service, and the defendants' motion to dismiss—nothing else. This is not an appeal that may be tried de novo in this court.

The second practice question must also be answered in the negative. Rule 52 (a), N.D.R.Civ.P., in part, provides:

"Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

Rule 41(b), N.D.R.Civ.P., requires findings of fact only if the court renders judgment on the merits against the plaintiff after sitting as trier of the facts. It is not applicable here.

Our neighboring State of Minnesota in Love v. Anderson, 240 Minn. 312, 61 N.W. 2d 419, said:

"Prior to the adoption of the Rules of Civil Procedure courts were not required to make findings in disposing of motions. Good practice was to the contrary. The Rules of Civil Procedure have not changed the practice. Nor are findings necessary in disposing of motions under similar federal rules. Defendants' motion to dismiss was predicated upon Rule 12.02(5) 'failure [of the complaint] to state a claim upon which relief can be granted.' By the express provisions of Rule 52.01 'Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 * * *.' Clearly no findings, in disposing of the motion, were necessary."

South Dakota has held no finding of fact was necessary in case of judgment on demurrer. Smithwick School District No. 6 v. Lincoln School District No. 26, 37 S.D. 38, 156 N.W. 587.

A similar situation existed in this State before the adoption of the new Rules of Civil Procedure in 1957. Section 28–1601, North Dakota Revised Code of 1943, provided the district court must reduce its decision to writing on all motions, applications, or special proceedings, and file the same with the clerk within 30 days after the same shall have been submitted to the court, unless excused as provided by the statute. The statute required findings of fact only upon the trial of any question or issue of fact by the court and in that event the statute allowed 60 days after the cause had been submitted for decision and filing of its findings, conclusions of law, and direction for entry of judgment.

The lower court's memorandum opinion and supplementary memorandum opinion

are listed in the settled statement of the case and are thus made a part of the record in this case.

For these reasons we shall treat the lower court's memorandum opinion, supplemental memorandum opinion, and the instrument entitled "Findings of Fact, Conclusions of Law and Order for Judgment" as the court's decision and order for judgment of dismissal.

■ The next question which we must consider is whether the judgment of dismissal is appealable. No appeal lies from a judgment that is interlocutory and not final. Anderson v. Bothum, 77 N.D. 678, 45 N.W.2d 488. Rule 41(b), N.D.R.Civ.P., provides, in part:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits, * * *."

■ We have examined the memorandums of the court and the instrument entitled "Findings of Fact, Conclusions of Law and Order for Judgment," as well as the judgment itself, and find the court has not specified that the dismissal shall be without prejudice. We, therefore, find it operates as an adjudication upon the merits and is with prejudice to the commencement of another action. It is, therefore, appealable.

■ The lower court found it had jurisdiction of the subject matter and of the persons. This part of the decision was adverse to the defendants but under Rule 41(b), quoted above, does not operate as an adjudication upon the merits and is not final. A decision denying a motion to dismiss an action for lack of jurisdiction is not appealable. Security National Bank of Fargo v. Bothne, 56 N.D. 269, 217 N.W. 148. Nonappealable decisions may be reviewed upon an appeal from the final judg-

ment if embodied in and made a part of the judgment roll by a statement of the case. Burdick v. Mann, 59 N.D. 611, 231 N.W. 545; City of Minot v. Minot Highway Center, Inc., N.D., 120 N.W.2d 597.

The only issue we can consider on this appeal is: Did the lower court err in its determination that the complaint failed to state a claim upon which relief can be granted? The complaint charges that the defendants are expending certain revenue which has become a part of the highway fund in violation of Article 56 and Section 186 of Article 12 of the North Dakota Constitution.

Article 56 provides a limitation upon the use of certain revenues, the salient part of which reads as follows:

"Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, * * * shall be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways."

Section 186 of Article 12, commonly called the "Jack Pot Amendment," appropriates the revenue described in Article 56 and other funds allocated to the State Highway Department. It states, in part, as follows:

"(1) All public moneys, from whatever source derived, shall be paid over monthly * * * to the State Treasurer, and deposited by him to the credit of the State, and shall be paid out and disbursed only pursuant to appropriation first made by the Legislature; provided, however, that there is hereby appropriated * * * the funds allocated under the law to the State Highway Department * * * for the construction, reconstruction, and maintenance of public roads."

The salient parts of the complaint allege that the defendants "have used revenues from gasoline and other motor fuel and excise and license taxation, motor vehicle registration and license taxes for the acquiring and controlling of all right and control over the erection, location or maintenance of signs or other form of advertising within 660 feet on both sides of the outer access right of way limits of Interstate Highway No. 94." "The defendants intend to persist in their unlawful course of action despite warnings and will continue to do so unless restrained by the court." The complaint alleges the foregoing acts are contrary to Article 56 and Section 186 of Article 12, supra, which earmark and appropriate the revenues named solely for construction, reconstruction, repair and maintenance of public highways, and the payment of obligations therefor. The complaint also alleges the legislature has made no appropriation to acquire or control advertising rights and that the purchase or acquisition of advertising control rights outside of the right of way is not a cost of construction, reconstruction, repair or maintenance as defined in the constitutional provisions.

■ No matters outside the pleadings were presented. The lower court was, and this court is, therefore limited in determining the motion to dismiss to the matters appearing on the face of the complaint. Department & Specialty Store Employees' Union v. Brown, 9th Cir., 284 F.2d 619; Burris v. International Brotherhood of Teamsters, etc., D.C., 216 F.Supp. 38.

Where no matters outside of the pleadings are submitted, a motion to dismiss performs essentially the same function as the former demurrer. It applies to claims and not defenses. The court will pass only on the sufficiency of the complaint and not on proof to support it. The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Vol. 1A, Section 356.

■ The motion admits the material facts alleged in the complaint for the purposes of the motion and challenges the plaintiff's right to relief. The allegations must be viewed in a light most favorable to the plaintiff, admitting and accepting as true all facts well pleaded. The motion should be granted only if the attack discloses with certainty the impossibility of proving a claim upon which relief can be granted. Barron and Holtzoff, Federal Practice and Procedure, Vol. 1A, Section 350.

For the purposes of ruling on a motion, we therefore accept as true and as a fact that the defendants have used and are using revenues from gasoline and other motor fuel and excise license taxation, motor vehicle registration and license taxes for the acquiring and controlling of all rights and control over the erection, location or maintenance of signs, or other form of advertising within a strip 660 feet wide on each side of the outer access right-of-way limits of Interstate Highway No. 94. The question then arises: Is the acquiring and controlling of such advertising rights "construction, reconstruction, repair or maintenance of public highways" or "public roads" within the meaning of Article 56 and Section 186?

The Constitution does not define the terms construction, reconstruction, repair or maintenance, public highways or public roads.

■ The sole object sought in construing a constitutional provision is to ascertain and give effect to the intention and purpose of the framers and of the people who adopted it. All rules of construction are subservient to and intended to effectuate such object. Primarily such intention and purpose are to be found in and deduced from the language of the constitutional provision itself. Dawson v. Tobin, 74 N.D. 713, 24 N.W.2d 737; Egbert v.

City of Dunseith, 74 N.D. 1, 24 N.W.2d 907, 168 A.L.R. 621; State v. Feist, N.D., 93 N.W.2d 646; Northwestern Bell Telephone Co. v. Wentz, N.D., 103 N.W.2d 245; State ex rel. Lyons v. Guy, N.D., 107 N.W. 2d 211; State ex rel. Lein v. Sathre, N.D., 113 N.W.2d 679.

The questions must be answered, if possible, from the language of the constitutional provision itself but, if the language is ambiguous or the answer doubtful, then the field of inquiry is widened and rules applicable to construction of statutes are to be resorted to. In fact, a wider field of inquiry for information is proper where needed in construing constitutional provisions than legislative enactments. State ex rel. Linde v. Hall, 35 N.D. 34, 159 N.W. 281.

It is a well-settled rule that in placing a construction on a constitutional provision, the court may look to the history of the times and examine the state of being existing when the constitutional provision in question was framed and adopted by the people in order to ascertain the prior law, the mischief, and the remedy. See State ex rel. Linde v. Hall, supra; State v. Lohnes, N.D., 69 N.W.2d 508; State ex rel. Syvertson v. Jones, 74 N.D. 465, 23 N.W.2d 54; Power v. Williams, 53 N.D. 54, 205 N.W. 9; State ex rel. Rausch v. Amerada Petroleum Corporation, 78 N.D. 247, 49 N.W.2d 14; 16 Am.Jur.2d, Constitutional Law, Sec. 87; 16 C.J.S. Constitutional Law § 30.

Article 56 does not purport to amend any previous constitutional provision. It speaks constitutionally on a subject that was similarly legislated on at least two previous occasions. Chapter 166, S.L.1937, and Chapter 169, S.L.1939. Both of these statutes were emergency measures adopted in the two successive sessions immediately previous to the adoption of Article 56 by the people. They also declare that the revenue from gasoline and other motor fuel taxes shall be applied only to construction, improvement, and maintenance of highways. Prior thereto, and for a period of at least ten years, some of said revenue was transferred by the legislature for other purposes. See Chapter 178, S.L.1927; Chapter 166, S.L.1929; and Chapter 185, S.L.1931.

Article 56 was not initiated as an idle gesture. It sought to deal with some problem that existed in the minds of its proponents and the people who adopted it by a vote of almost two to one (91,149 to 49,324).

Article 56 was approved by the people on June 25, 1940. It has remained unchanged, except for an amendment exempting from the revenues earmarked revenue from aviation gasoline and unclaimed aviation motor fuel refunds and other aviation motor fuel excise license taxes used by aircraft. Section 186 was approved by the people on June 28, 1938. Both constitutional amendments were initiated on petition.

In the case of McKenzie County v. Lamb, 70 N.D. 782, 298 N.W. 241, this court held that Article 56 of the Constitution did not limit the expenditure of the revenue exclusively to the "State Highway System," which was only those roads designated by the highway commissioner. We held that a legislative appropriation to pay for a portion of the construction of a highway approach to a bridge, which approach and bridge were not a part of the State Highway System, was nevertheless a public highway within the definition in Article 56. In discussing the history of its initiation and adoption, the court said:

"The purpose of the amendment was to prevent any use of the gas revenues for other than highway purposes. Large sums had come into the treasury from the tax on motor vehicle fuel and from motor licenses and tax charges. On several occasions the legislature had appropriated most generously for other than highway purposes out of the funds thus accruing. The amendment was sponsored by the North Dakota County

Commissioners Association. Prior to the election at which it was adopted it was published in the Publicity Pamphlet. * * * Accompanying it in the Publicity Pamphlet were the arguments advanced by its sponsors in favor of its adoption. These clearly show that the sole purpose of the amendment was to dedicate the revenue from the gas tax to public highway purposes. * * * And it is inconceivable that the sponsors, county commissioners, particularly interested as they are in all public highways, intended to make it impossible for the legislature to say where and how on such highways this revenue should be used."

Further clarification of the purpose of the amendment is stated in some of the advertisements used in support of a "Yes" vote to this constitutional amendment prior to the election at which it was approved in 1940. We find statements were made such as these:

"Over three million dollars of your money has been diverted to other than highway purposes. You pay the tax— North Dakota needs the roads."

and

"This kind of diversion is double taxation. It means that a farmer hauling 10 miles to market must pay more tax for schools and relief than one hauling 5 miles.

"It means that a doctor who drives 20,000 miles a year attending the sick must pay more for general government purposes than a banker who drives 10,000 miles a year.

"They all need good roads and willingly pay gas tax and license fees to get them. Diversion of this money means fewer good roads and unjust taxation of all vehicle owners."

We also find an editorial comment which stated:

"Every so often some individuals or group comes up with a proposal to divert gasoline tax money to a purpose other than highway construction and maintenance.

"Such ideas, in effect, would make the motorist pay more than his share. This irks the major oil companies and public officials who are depending on gas tax money to do road work.

" * * * advocates of the bill say that a constitutional amendment is the only way they can make sure some public money-grabber will not divert the money to non-highway uses."

■ It is clear the purpose of the amendment was to prevent any use of the earmarked revenues for anything but highway purposes and not to restrict the terms of the amendment by a narrow construction of the purpose for which the revenues may be used within the area designated.

■ The question then arises: Was the control of billboards and advertising on or adjacent to highway rights of way considered as a part of a public highway at that time? We find it was.

Statutes in effect at the time the amendment was voted on by the people had created a State Highway System. It also created a State Department of Highways, and provided its powers and duties (Chapter 159, S.L.1927). Among the specific enumerations of power of the department was the power:

"To remove or cause to be removed or destroyed any and all advertising signs, bill-boards and other signs erected on the right of way of the State Highway System, and also such other signs and bill boards on land abutting a state highway, erected and maintained contrary to law." Sec. 4(10), Chapter 159, S.L.1927.

Section 19 of the 1927 Laws created the State Highway Fund. It allowed for matching Federal aid and states, in part:

"The cost of construction and reconstruction of highways in an amount

equal to the state's share of the amount necessary to equal the sum of Federal aid granted to this state annually by the United States Government for road purposes in North Dakota."

In view of this history and statutes in effect at the time the constitutional amendment was voted upon, it is clear the people intended by Article 56 to make the scope broad enough to include such matters as were considered within the area of the powers of the State Highway Department, as those powers may exist in relation to public highways. We find this included the right to control advertising signs, billboards, and other signs erected on the right of way, as well as on lands abutting thereon, if such control was provided for by law.

In 1956 Congress enacted the Federal-Aid Highway Act which increased the Federal share of the cost of constructing the interstate system. In 1958 Congress amended the 1956 Act and enacted into law Section 131(a) of Title 23 U.S.C., 1958 Edition, whereby it declared it to be in the public interest to encourage and assist the States to control the use of an improved area adjacent to the interstate system by controlling the erection and maintenance of outdoor advertising signs, displays and devices adjacent to that 'system, and declared it to be a national policy that the erection and maintenance of outdoor advertising signs, displays, or devices within 660 feet of the edge of a right of way and visible from the main traveled way of all portions of the interstate system, should be regulated consistent with the national standards to be prepared and promulgated by the secretary. It also authorized the Secretary of Commerce to enter into agreements with the State Highway Department to carry out the national policy. On November 10, 1958, the Secretary of Commerce recommended and adopted regulations which are found in Title 23 of Federal Regulations wherein the control to be exercised was related directly to highway purposes. Section 131 (e), Title 23 U.S.C., 1958 Edition, provides that where a State acquires, by purchase

or condemnation, the right to advertise or regulate advertising in the area adjacent to the right of way on interstate systems, the cost shall be considered as a part of the cost of construction of such project and that Federal funds may be used to pay the Federal pro rata share thereof.

In harmony with the Federal statutes and the regulations, our legislature in 1959 (Chapter 229) amended and reenacted Chapter 177 of the Session Laws of 1953 to provide:

"the highway authorities of the state, * * * may acquire private or public property and property rights for controlled access facilities and service roads, including * * * such advertising rights outside of the right-of way as may be determined by the commissioner to be in the public interest, * * *."

The lower court took judicial notice of this amendment and construed the constitutional provision in the light of the amendment and found that the terms "construction, reconstruction, repair and maintenance of public highways" included acquiring and controlling "such advertising rights outside of the right-of-way as may be determined by the commissioner to be in the public interest" for controlled access facilities.

In view of the historical and statutory background of the amendment, we find the lower court's decision to be correct. The same background applies to the construction of Section 186 of the Constitution which was approved by the people in 1938, only two years earlier insofar as it appropriates the funds allocated to the State Highway Department for the construction, reconstruction, and maintenance of public roads. The Highway Department had the power under the 1927 Act to control advertising and the statutes controlling and earmarking gasoline tax revenues were in effect. By Article 56 of the Constitution, the people froze into a constitutional pro-

vision a subject already covered by statute.

The judgment of dismissal is affirmed.

BURKE, C. J., and STRUTZ and ERICKSTAD, JJ., concur.

KNUDSON, J., not having been a member of the Court when the case was submitted, did not participate.